
ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
REEMA M. EL-AMAMY (Cal. SBN: 237743)
Assistant United States Attorney
Violent and Organized Crime Section
MICHAEL DORE (Cal. Bar No. 227442)
Assistant United States Attorney
Violent and Organized Crime Section
    312 North Spring Street, Suite 1500
    Los Angeles, California 90012
    Telephone:  (213) 894-0721
    Facsimile:  (213) 894-3713
    Email: Michael.Dore@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) No. CR 10-00351-ODW |
|---|---|
| Plaintiff, | ) GOVERNMENT'S MOTION TO COMPEL |
| | ) DEFENDANTS TO PERMIT PHOTOGRAPHING |
| v. | ) OF TATTOOS |
| ARMANDO BARAJAS, et al., | ) Hearing Date: October 17, 2012 |
| | ) Time: 10:00 a.m. |
| Defendants. | ) Ctrm: Hon. Otis D. Wright |

Plaintiff United States of America, by and through its attorney of record, the United States Attorney's Office for the Central District of California, hereby moves for an order compelling the defendants who remain pending trial in this matter (except for defendant Salvador Martinez) to permit photographs to be taken of any and all tattoos located on their bodies, subject to the proposed conditions outlined below.

//

//

//

This motion is based on the attached memorandum of points and authorities, the files and records of this case, and any further evidence as the Court may wish to consider.

Dated: September 19, 2012

          Respectfully submitted,

          ANDRÉ BIROTTE JR.
          United States Attorney

          ROBERT E. DUGDALE
          Assistant United States Attorney
          Chief, Criminal Division

                 /s/
          Michael Dore
          Assistant United States Attorney

**I**

**INTRODUCTION**

The United States respectfully moves for an order requiring all defendants who remain pending trial in this matter (except defendant Salvador Martinez (#45)) to permit government agents to photograph any and all of each respective defendant's tattoos. As of the date of this motion, those defendants are: Armando Barajas (#1), Juan Gil (#2), Carlos Rivera (#7), Juan Diaz (#9), Maria Lopez (#26), Jessica Medina (#27), Raul Prieto (#29), and Steven Vega (#32) (collectively, "defendants").

As set forth below, the compelled exhibition of tattoos is non-testimonial and, therefore, defendants have no right to refuse to permit photographs of their tattoos.  Even if considered testimonial, any decision by defendants to get new tattoos was voluntary and the government's cataloguing of those tattoos would not encroach on defendants' constitutional rights. Because any photographs of defendant's tattoos would have been taken more than two years ago, the government requests an order that would enable the documentation of any additional tattoos that defendants may have acquired in the interim.

**II**

**FACTS**

Defendants have been charged with violating 18 U.S.C. § 1962(d) (Racketeer Influenced and Corrupt Organizations ("RICO") Conspiracy), among other alleged crimes.[1]  Defendants

---

[1] Defendant Martinez, whom the government does not seek to photograph, is charged with violating 21 U.S.C. § 846 (Conspiracy to Distribute and to Possess With Intent to Distribute

are charged with either participating in the "Black Angels" gang, or conspiring with members of the Black Angels to commit assorted crimes.

Law enforcement records, observations by law enforcement personnel, and photographs indicate that some defendants have tattoos evidencing their membership in, or association with, the Black Angels gang. At trial, the government intends to introduce photographs of defendants' tattoos together with other evidence and testimony to show, among other things, the existence of the Black Angels gang as a racketeering enterprise and an association in fact, under 18 U.S.C. § 1961 et seq., and that defendants are members or associates of the Black Angels gang.

The indictment alleges that one characteristic of Black Angels gang membership is the display of gang tattoos. (CR ¶ 7.) Because defendants generally were arrested over two years ago, some or all of them may have gotten tattoos in the interim. Accordingly, the government seeks an order that requires each defendant to make himself or herself available to have any and all tattoos photographed for possible use at trial.

### III

### ARGUMENT

**A. Photographing Defendant's Tattoos Is Constitutionally Permissible**

Defendants have no constitutional right to refuse to permit photographs to be taken of their tattoos. The Fifth Amendment privilege against self-incrimination only protects an accused "from being compelled to testify against himself or otherwise to

---

Methamphetamine and Heroin).

4

provide . . . evidence of a testimonial or communicative nature." Schmerber v. California, 384 U.S. 757, 761 (1966). The compelled display of "identifiable physical characteristics," however, is not testimonial or communicative in nature, and therefore does not infringe the privilege against self-incrimination. United States v. Dionisio, 410 U.S. 1, 5-6 (1973).

As the Supreme Court has explained:

> Both federal and state courts have usually held that [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.

Schmerber, 384 U.S. at 764 (emphases added); see also Gilbert v. California, 388 U.S. 263, 266-67 (1967) ("The privilege [against self incrimination] reaches only compulsion of an accused's communications, whatever form they might take. . . and not compulsion of real or physical evidence. . . . A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying characteristic outside [the Fifth Amendment's] protection.") (emphasis added; internal quotation marks and citations omitted).

As Justice Holmes explained in Holt v. United States, 218 U.S. 245 (1910), "the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body when it may be material." Id. at 252-53. Thus, courts have routinely compelled an accused to provide fingerprints, blood samples, voice exemplars, handwriting samples, to stand in a line-up, to wear particular

clothing, and to submit to photographs. See, e.g., Dionisio (voice exemplars); Gilbert (handwriting exemplars); Schmerber (blood samples).

With respect to tattoos, the Ninth Circuit has held that it was error to prohibit a defendant from displaying his hands and their distinctive tattoos to the jury without subjecting himself to cross-examination precisely because the display of tattoos is non-testimonial and the government could compel it:

> [A] display of hands is non-testimonial. This has been repeatedly held in cases in which the government seeks to compel a defendant to show various types of physical characteristics to the jury. The cases hold that this does not infringe the Fifth Amendment privilege against self-incrimination.

United States v. Bay, 762 F.2d 1314, 1315 (9th Cir. 1984) (citing Dionisio, Schmerber, Holt, and United States v. Valenzuela, 722 F.2d 1431, 1433 (9th Cir. 1983)); see also Mercado v. Crawford, 2010 U.S. Dist. LEXIS 49563, at *47 (D. Nev. Apr. 26, 2010) ("Tattoos are a physical attribute which is not protected as testimonial."); Chavez v. Compton, 2010 U.S. Dist. LEXIS 4285, at *4 (D. Mont. Jan. 20, 2010) ("There is no basis upon which to bring a Fifth Amendment claim as the display of Chavez's tattoos were non-testimonial.").

Even if considered testimonial, any new tattoos themselves would not have been compelled by the government. As the Second Circuit recently held, even if law enforcement could read a defendant's tattoo "only by applying physical force during his arrest," it "would still not amount to compulsion for Fifth Amendment purposes." United States v. Greer, 631 F.3d 608, 613 (2d Cir. 2011). Consequently, an order compelling defendants to

permit the taking of photographs of their tattoos would not violate their privilege against self-incrimination.

### B. Defendants Were Arrested In This Case Over Two Years Ago, And May Have Gotten New Tattoos Since Then

Many of the defendants have had their tattoos photographed before, and for several defendants these photographs have revealed numerous tattoos that appear gang-related. However, the government seeks additional photography at this point because a significant period of time has passed since defendants were taken into custody in this case (in fact, defendant Juan Gil was already in custody on the day of the April 2010 takedown in this case, and thus was not arrested and photographed contemporaneously with other defendants).

As indicated in the criminal docket, each remaining defendant made his or her initial appearance in this case in mid-2010:

| DEFENDANT | DATE OF INITIAL APPEARANCE |
| --- | --- |
| Armando Barajas (#1) | April 21, 2010 (CR 108) |
| Carlos Rivera (#7) | June 2, 2010 (CR 426) |
| Juan Diaz (#9) | July 14, 2010 (CR 610) |
| Maria Lopez (#26) | April 21, 2010 (CR 155) |
| Jessica Medina (#27) | April 21, 2010 (CR 159) |
| Raul Prieto (#29) | June 28, 2010 (CR 553) |
| Steven Vega (#32) | June 17, 2010 (CR 518) |

Inmates often are able to get tattoos even while in custody. See, e.g., Rodriguez v. McDonald, 2012 U.S. Dist. LEXIS 111464, at *54-55 (C.D. Cal. Mar. 22, 2012) (finding that person had "ample opportunity" to obtain a tattoo during period he was in custody); Rickner v. Hutchinson, 2009 U.S. Dist. LEXIS 128820, at

*24 (E.D. Mich. Oct. 9, 2009) ("[Plaintiff] reported receiving prison tattoos during his incarceration."). Defendants Prieto, Medina, and Lopez, who are out of custody on bond, have had even more opportunity over the past 2+ years to get tattoos related to the criminal enterprise alleged in the indictment.[2]

Indeed, in arguing that he should be released on bond in August 2010, defendant Prieto claimed that he "has none of the gang tattoos worn by members of the Black Angels – or their affiliated groups," and thus he was not a Black Angels member and his role in the case was "very small." (Def. Prieto's Mem. in Support of Request for Release on Bond (Aug. 30, 2010) (CR 684) at 5.) However, in or around March 2011, defendant Prieto apparently admitted at the San Bernardino Sheriff's Department Central Detention Center to being a member of the OVS gang, a "sub-clique" of the Black Angels. (Indictment (CR 1) at 2.) The government believes it is necessary and appropriate to determine whether since being arrested in this case more than two years ago defendant Prieto and/or any of the other defendants have decided to use tattoos to identity themselves with the alleged Black Angels gang enterprise, or the aligned Mexican Mafia organization. Such tattooing would show, among other

---

[2] The conditions of release for defendants Prieto, Medina, and Lopez already contemplate that each of them "will agree to submit to a search of [his or her] person and/or property by Pretrial Services in conjunction with the U.S. Marshal" to determine compliance with conditions regarding possession of weapons or illegal drugs. (See CR 1022 (Prieto); CR 1286 (Lopez); CR 247-1 (Medina).) Moreover, on July 11, 2012, United States Pretrial Services petitioned the Court for action on defendant Medina's conditions of pretrial release, noting that she had tested positive for methamphetamine and had police contacts with alleged gang members. (CR 1580.)

8

things, the commitment a given defendant has to the alleged enterprise and the existence of the enterprise itself.

The government does not oppose taking various steps to minimize any claimed burden on defendants.  Thus, the government is seeking a current photographic inventory of defendants' tattoos rather than any physical display of them at trial.  See Cao v. Taylor, 2010 U.S. Dist. LEXIS 139928, at *31-32 (C.D. Cal. Nov. 2, 2010) (rejecting habeas petition arising from California state criminal trial in which defendant was ordered to "take off his shirt in front of the jury to show his tattoos").  Moreover, (subject to BOP discretion for those in custody) the government does not oppose having any photographing take place in a private setting, with defendants' respective lawyers permitted to be present, a law enforcement officer of the same gender as a given defendant taking the photographs, and a limitation that the photographs be limited to areas of the body visible if defendant were wearing a bathing suit (i.e., bikini or reasonably sized swim trunks).

For all defendants, and particularly those defendants who are not in custody (that is, defendants Prieto, Lopez, and Medina), the government further requests that if the Court grants the government's motion that it permit the photography of areas of defendant's bodies covered up by any bandage or wrapping, or irritated areas of the skin that appear in the photographer's judgment to have recently had a tattoo removed.

# IV

# CONCLUSION

For the forgoing reasons, defendants should be ordered to permit government agents to take photographs of all tattoos on the defendants' bodies subject to the conditions outlined above.

Dated: September 19, 2012

Respectfully submitted,
ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

      /s/
MICHAEL DORE
Assistant United States Attorney

Attorneys for Plaintiff
United States of America