1              UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3              HONORABLE OTIS D. WRIGHT

4          UNITED STATES DISTRICT JUDGE PRESIDING

5                      - - -

6
United States of America,          )
7                      PLAINTIFF,    )
                                     )
8  VS.                              )   NO. CR 10-351 ODW
                                     )
9  Carlos Rivera, Jessica Medina, Raul)
   Prieto,                          )
10                      DEFENDANT,   )
   _____ )
11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15              LOS ANGELES, CALIFORNIA

16              JURY TRIAL - DAY ONE

17          TUESDAY, DECEMBER 4, 2012

18      JURY VOIR DIRE, 9:13 A.M. - 1:56 P.M.

19

20

21      _____

22          KATIE E. THIBODEAUX, CSR 9858
            U.S. Official Court Reporter
23          312 North Spring Street, #436
            Los Angeles, California 90012

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFF:

4         U.S. DEPARTMENT OF JUSTICE
          U.S. ATTORNEY'S OFFICE
5         BY: REEMA EL-AMAMY, AUSA
          -and- MICHAEL DORE, AUSA
6         312 North Spring Street
          Twelfth Floor
7         Los Angeles, CA  90012

8

9    FOR DEFENDANT RIVERA:

10        ANGEL NAVARRO LAW OFFICE
          BY:  ANGEL NAVARRO
11        714 West Olympic Boulevard
          Suite 450
12        Los Angeles, CA  90015

13

14

15   FOR DEFENDANT MEDINA:

16        JOSEPH F. WALSH LAW OFFICES
          BY:  JOSEPH F. WALSH
17        205 South Broadway
          Suite 606
18        Los Angeles, CA  90012

19

20   FOR DEFENDANT PRIETO:

21        CEPHAS LAW FIRM
          BY:  DANA CEPHAS
22        72960 Fred Waring Drive
          Palm Desert, CA  92260
23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        LOS ANGELES, CALIFORNIA; TUESDAY, DECEMBER 4, 2012

 2                        9:13 A.M.

 3                        - - - - -

 4

 5

 6

 7      (The following proceedings were held outside the

 8        presence of the jury:)

 9      THE CLERK:  Calling Item 1, CR 10-351, United

10   States of America versus Carlos Rivera, et al.

11        Counsel, may I have all appearances, please.

12      MS. EL-AMAMY:  Good morning, your Honor.  Reema

13   El-Amamy and Michael Dore on behalf of the United States.

14   Also present is DEA Task Force Officer Steve Walton.

15      THE COURT:  Good morning.

16      MR. WALSH:  Morning, your Honor.  Joseph Walsh

17   appearing on behalf of Jessica Medina who is present in

18   court on bond.

19      MR. CEPHAS:  Dana Cephas for Raul Prieto who is

20   present and on bond.

21      MR. NAVARRO:  Morning, your Honor.  Angel Navarro

22   representing Carlos Rivera seated to my left.

23      THE COURT:  All right.  Before we bring the panel

24   down, I know there is a couple of things that we needed

25   to talk about.
```

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

```
 1              I did receive Mr. Cephas' objections to
 2    several jury instructions.  We don't have to worry about
 3    that right now.  There was an issue with respect to
 4    exhibits that could be utilized during opening
 5    statements, and I understand that too has been resolved.
 6         MS. EL-AMAMY:  Yes, your Honor.  The government
 7    filed an ex parte application to use certain exhibits,
 8    and the court granted that application.
 9         THE COURT:  Okay.
10         MR. CEPHAS:  Your Honor, to the extent it is
11    resolved, the defendants still object to the use of those
12    exhibits.  I didn't want the court to misunderstand what
13    the government is saying.  We still believe that those
14    exhibits should not be used during their opening because
15    they haven't been authenticated.  There is no foundation.
16    I just wanted the record to be clear, your Honor.
17         THE COURT:  All right.  In looking at the
18    exhibits, I was really less concerned about
19    authentication given that these were photographs of
20    individuals, and I think in one case there are
21    photographs of some graffiti or in a couple of cases
22    photographs of graffiti.  I take the government at their
23    word that they will actually have live witnesses who are
24    going to identify these things.
25         MS. EL-AMAMY:  That's correct.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  And, of course, if that fails to be
 2    the case, then Andre and I will have a chat, but if you
 3    or any defense attorney has a good faith belief that
 4    there is a lack of evidence to supply the authentication,
 5    then that is what I would like to talk about.
 6          MR. CEPHAS:  Well, your Honor, I can't say
 7    because --
 8          THE COURT:  You don't know yet.
 9          MR. CEPHAS:  I don't know.  But there is also
10    relevancy issues, prejudicial effect of some of the
11    photos.  There are going to be scary photos that may
12    intimidate the jury right from the beginning of the case
13    and color the jury in such a way as to make it impossible
14    for our clients to have a fair trial.
15            So that, you know, is my concern that the
16    minute this trial starts, the jury is going to see
17    one picture after another picture after another picture
18    of some individuals who I recognize one is Carlos Rivera,
19    but the others I don't personally know, and so I can't
20    say right now whether they are relevant.
21          THE COURT:  That is the problem I have with
22    respect to one of these.  Exhibit 4.  It is a photograph
23    of a Black Angels gang member who Mr. Rivera spoke with,
24    and after I read this, my question is so what?  Why is
25    this relevant?  I just don't understand.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        MS. EL-AMAMY:  Well, one of the things that the

2    government needs to prove is the enterprise.  The

3    enterprise is made up of members.  They identify each

4    other, and these are individuals who are acting

5    criminally together.  It is part of the government's

6    case.

7        THE COURT:  All right.  That was a struggle,

8    wasn't it.  All right.  I do have a problem with the

9    relevancy of that particular exhibit.  Likewise, with

10   Exhibit 6.  You indicated that those were leaders of the

11   gang and photographs of Mr. Gil's tattoos, and you

12   indicate that these will help establish, these

13   photographs are relevant in that it will help establish

14   the criminal enterprise and the organized leadership

15   structure.  Well, granted, these are facts which you

16   probably are going to have to establish, but I am not

17   certain that these photographs establish those facts.

18       MS. EL-AMAMY:  Right.

19       THE COURT:  These are the two that I had a problem

20   with, but if there has been a resolution.  Also, No. 8, I

21   have got a big so what next to No. 8 as well.  And 11, I

22   have a big red no.  Photographs of two gang members

23   displaying gang hand symbols.  Really?  Let me do this.

24       MR. CEPHAS:  Your Honor, I think we have a

25   different.  Our 11 isn't --

1          MR. NAVARRO:  Your Honor, I think what the problem

2     is the exhibit that you have, the document you have --

3     Angel Navarro, by the way -- the document you have was

4     the application that was filed by the government.  What

5     we are looking at is the exhibit list, exhibit books

6     which is different.  So I did not bring that document

7     with me, but I think that is the confusion that we have,

8     and Mr. Cephas and I worked together on this response,

9     your Honor, because my concern was the extreme prejudice

10    to my client of having tattoos of defendants who are

11    going to have trial next year which have, for example,

12    the Mexican Mafia on his chest.  Most people are going to

13    see that, and they are going to be making a lot of

14    assumptions about these three defendants.  That is my

15    opinion.

16         THE COURT:  Okay.  Why is that unfair?

17         MR. NAVARRO:  It infers that they are very

18    dangerous people and they know very dangerous

19    individuals.

20         THE COURT:  And, what, is this not true?

21         MR. NAVARRO:  Well, your Honor, I don't think the

22    government is going to present any evidence of any

23    communications between my client and Mr. Nieto.

24         THE COURT:  I think what the government is trying

25    to establish is these defendants' association with this

```
 1    particular enterprise.

 2          MR. NAVARRO:  And the government can do that

 3    through testimony of law enforcement officers.  They do

 4    it all the time.

 5          THE COURT:  You would like to sanitize the

 6    government's case, take out everything that is

 7    prejudicial.

 8          MR. NAVARRO:  I want to make it a fair trial.

 9    That is really what I want.

10          THE COURT:  If it is not misleading, if it is not

11    factually inaccurate, if it is not unduly prejudicial,

12    what makes it unfair?  Just because it is prejudicial?

13    It is going to be prejudicial.

14          MR. NAVARRO:  I think you have to weigh what is

15    the value of those photographs against the prejudice to

16    this defendant, and one of our positions is and I think,

17    I believe I speak for all three counsel that the effect

18    of the photographs, if you look at them cumulative, there

19    is all these photographs of all these tattooed gang

20    members who have horns on their head, tattoos on their

21    upper lip who have Mexican Mafia hands on their upper

22    chest, who have angels with pitchforks tattooed on their

23    back which none of our clients have.

24          And I am not saying I am going to be disputing

25    during the trial that my client is a member of the gang.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   These tattoos speak for themselves, and I can't object to

 2   his tattoos coming in.  The case law is pretty clear on

 3   that.  We never addressed that that way, but our concern

 4   is if in opening statement, the government starts showing

 5   all these photographs of all these people, there is

 6   photographs there I think from the '70's or '80's, I can

 7   only assume from the haircuts of the young men.

 8           Those old gang photographs which my client

 9   probably wasn't even born yet, and how they authenticate

10   those photographs, I don't know.  How they authenticate a

11   photograph of a bunch of Black Angels from a long time

12   ago, I don't know how the government does that.  And if

13   this was a situation where, for example, we were trying a

14   number of defendants together including the lead

15   defendants, it may be different because those individuals

16   may have those tattoos and that is the reality, but some

17   of the photographs are extremely -- there is relevance

18   issues, but, more importantly, there is prejudicial

19   issues, though, that I am concerned about.

20       THE COURT:  What I am getting from you, though, is

21   that you say that the government intends to, at least,

22   you believe the government intends to show photographs of

23   individuals who may no longer even be alive.

24       MR. NAVARRO:  I believe that may well be the case.

25   I don't know.  There is people in at least
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    two photographs that are older photographs.  I have no

2    idea who those people are.  And we know they are Black

3    Angels.  We know -- I don't think that they are

4    photographs from this decade just by the way the haircuts

5    are of the young men.  They are maybe from the '80's, the

6    '70's.  I have no idea.

7        THE COURT:  Let's do this because you are right,

8    we do need to be reading out of the same hymnal.  Well, I

9    am going off the only thing I have.  I didn't have the

10   exhibit list that you all have.

11       MR. CEPHAS:  Your Honor, I believe the court's

12   copy is --

13       THE COURT:  All right.  So I have one now.  Okay.

14   What we will do, then, is right before we give opening

15   statements, we will go over this, and I would prefer -- I

16   don't know which of you is going to give the opening.

17       MS. EL-AMAMY:  I am.  I am going to have to take

18   stuff out.  I have a Power Point presentation.  I can

19   delete it.  I just need to have that direction.

20       THE COURT:  Maybe.  Maybe.  But let's see where we

21   end up.

22       MS. EL-AMAMY:  Okay.

23       THE COURT:  All right.  Was there anything else

24   that we needed to talk about before we brought the jury

25   down?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        MR. CEPHAS:  I think there is, but before I

2   address this other issue, your Honor, with respect to

3   objections, can we have a standing order that the

4   three of us each join in the objection of the other so I

5   don't have to say join, join, join throughout the trial.

6        THE COURT:  Absolutely.  And we will make that

7   very clear for the record.  An objection asserted on

8   behalf of any defendant is deemed to be asserted on

9   behalf of all.  I can't see a down side to that.  If

10  anyone does, you can opt out, but I don't see a down side

11  to that.  But I think that would streamline things a bit.

12  Okay.

13        The other thing that I have been asked to

14  address is the potential juror list, No. 61 is not here.

15  So you can strike that one.

16        MR. CEPHAS:  Your Honor, I wanted to raise an

17  additional issue regarding a memorandum of law that was

18  filed late last night.  I didn't see it until this

19  morning, by the government.  It is Docket No. 1892,

20  memorandum of law re potential evidentiary issues.

21        THE COURT:  Yes.

22        MR. CEPHAS:  And I think we should address this

23  now.

24        THE COURT:  Okay.

25        MR. CEPHAS:  It appears that -- and the government

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   can correct me if I am wrong because I have only read it

 2   quickly.  It appears that the government is going to

 3   attempt to bring in audio recordings and let certain law

 4   enforcement personnel testify as to people who are

 5   speaking on the recordings even though they have not yet

 6   been authenticated as to the speakers and we don't know

 7   whether they will later be authenticated.

 8              I believe that there is no basis for that in

 9   law or in fact and that if at all, the government should

10   put on witnesses who can attempt to authenticate the

11   speakers.  And then once that is done, then other

12   witnesses can testify regarding those.  But I don't

13   believe that the government should be permitted to let

14   witnesses testify and have the jury hear recordings

15   claiming that they are either Prieto, Rivera or Medina

16   when in fact no authentication foundation has been done

17   with respect to those recordings.

18        MR. DORE:  Your Honor, the government did file its

19   memorandum of law yesterday early afternoon about

20   1:00 p.m., and the issue, I believe, is what is necessary

21   to authenticate a recording.  And as we put in our brief,

22   you do not need someone who recognizes the voice to

23   authenticate the recording.  There can be circumstantial

24   indicia within the object or recording which indicates it

25   is what the government claims it is.  And that is why if
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    and when we had witnesses testify as to the events which

2    are also described in those recordings and those

3    recordings then -- for instance, if a law enforcement

4    officer testifies that he went to the residence of

5    Jessica Medina and Carlos Rivera and there were narcotics

6    recovered from a red Acura, and then we have through

7    testimony also identified a recording as having taken

8    place the day of that arrest and that recording includes

9    details in which a woman describes how the Ontario Police

10   Department came and spoke to Carlos and found stuff in

11   the red Acura and someone said, Jess, you should give

12   them the keys.

13          We believe that those facts within the call

14   authenticate them as what the government claims it is.

15   Separate and apart from that, we will have a witness who

16   testifies and identifies, I can represent to the court,

17   the voices of the people in that call.

18          And so even if that was not sufficient to

19   authenticate the call which we believe it is, we think

20   those calls should be conditionally admitted until later

21   proven up by the voice because otherwise we have only

22   what the officer can testify to which is, for example,

23   Mr. Rivera and Ms. Medina said they didn't know whose car

24   it was, they didn't know where the keys were.  And then

25   we have to wait until we get to that other witness who

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    can identify that voice who will be testifying as to

2    numerous recordings to finally get the recording where

3    Ms. Medina says I have the keys in my pocket.

4            And that is why we think it is appropriate

5    under Rule 611 for your Honor to control the presentation

6    of evidence and that the authentication is sufficient in

7    and of itself under 901(b)(4)to indicate that that call

8    is what we claim it is, and I can represent to the court

9    that our later witness who will be testifying as to

10   numerous calls will be able to identify those voices in

11   the call.

12           So that is the only reason we thought it was

13   appropriate to raise those identified calls at the

14   specified times.

15           THE COURT:  Yes.  Mr. Cephas.

16           MR. CEPHAS:  The government relies on that

17   proposition for a First Circuit case.  They say it is

18   well settled, but they are relying on United States

19   versus Ingram from 1987.  They are not even relying on

20   Ninth Circuit authority.

21           And, moreover, this is done all the time that

22   calls are authenticated and foundation is laid for them

23   before witnesses testify about those issues.  This was

24   dropped on us literally at the 11th hour, more like 11:30

25   last night after I was in bed, after I am sure other

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

1    defense counsel were.

2              I haven't had a chance to research the law

3    cited by the government, and I just don't believe they

4    should be allowed to create their own emergency and now

5    say, well, it is -- this is the way we want to present

6    our case, so let us do this.

7              One of their witnesses who apparently is going

8    to authenticate these voices later on is himself someone

9    who never heard these individuals, Juan Lemus.  According

10   to the interview memorandum that we received yesterday

11   from Mr. Lemus, he is going to testify that he looked at

12   line sheets which are hearsay.  The line sheets had the

13   names of Mr. Prieto or Ms. Medina or Mr. Rivera, and then

14   based on his review of those hearsay documents, he

15   listened to recordings that said what the line sheet

16   said.  And after listening to hundreds of recordings, he

17   now can authenticate Mr. Prieto, Mr. Rivera and

18   Ms. Medina.

19        THE COURT:  Having never heard them speak before?

20        MR. CEPHAS:  Correct.  He never heard them speak,

21   but he is going to authenticate.

22        THE COURT:  No, he is not.

23        MR. CEPHAS:  Well, that may be what the government

24   is talking about.

25        THE COURT:  Yeah.  But we are speculating on what

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   the government might do.  Let's don't do that.  I am glad

2   that the government put on the record what was in their

3   papers, and after reading the papers and considering the

4   court's authority to have some control over how the

5   evidence is ultimately presented in the case and taking

6   the government at its word that they will indeed have

7   witnesses who are going to testify to certain things, I

8   don't find anything improper about introducing the

9   evidence in this particular order.

10          But don't make a representation, don't make a

11  promise and then you don't keep it.  All right?

12          MR. DORE:  It will be kept, your Honor.

13          THE COURT:  Okay.  Let's go.

14      (The following proceedings were held in the

15       presence of the prospective jurors:)

16      (The prospective jurors were sworn.)

17          THE COURT:  All right.  Good morning.  Welcome.

18  You are here as prospective jurors to sit on a criminal

19  case.

20          This is a criminal case that will be tried

21  against -- we are trying three defendants as opposed to

22  the usual one.

23          Normally, what we have is a statement of the

24  case jointly prepared by the attorneys which gives you an

25  overview of the case, basically lets you know whether or

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    not this is a patent infringement case or bank robbery

2    case.  And it is, generally, just a couple of sentences

3    that accomplish nothing more than that.  I have got bad

4    news for you.

5           I am going to read you the brief short

6    statement of the case jointly prepared by the attorneys.

7    The reason I am doing this is two-fold.  There may be

8    something about this case, the facts of this case, the

9    crime, that may strike some of you close to home for

10   various reasons, that may simply make you not suited to

11   sit as jurors on this case.  We need people who can come

12   in with an open mind with no preconceived notions or

13   anything who can listen to the evidence and make a fair

14   and impartial decision.

15          That is what each of you would want if you

16   were accused.  You would want people with no preconceived

17   ideas who were fair, absolutely fair and impartial, who

18   weren't carrying so much baggage that they could not set

19   that aside and they could not render a fair and impartial

20   verdict.

21          If we can only do one thing in this building,

22   it must be to ensure that criminal defendants have a fair

23   trial.  I can't think of anything else that is more

24   important that we do in this building.  You all are about

25   to become a part of that.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          I am not certain that we as citizens have a

2     greater obligation.  All right.  You know, last November,

3     we did that thing, and that is very important.  But I

4     don't believe there is anything more important that we do

5     as citizens than sit as jurors in a criminal case, not a

6     case involving, you know, which deep pocket the money is

7     going to go into.  This is important.  So we are going to

8     go through this with some painstaking detail.

9          And I am going to give you the rules of the

10    game momentarily, but, first, let me let you know what

11    the case is about.  If there is something about this case

12    that just strikes to your core, that makes you say, no,

13    this one, I can't do this one, I just can't do this one,

14    let us know.  All right.

15         Okay.  Here is what the lawyers have prepared.

16         Defendants Carlos Rivera, Jessica Medina and

17    Raul Prieto, collectively, the defendants, each are

18    charged in an indictment with separate violations of

19    federal law including violations of the Racketeer

20    Influenced and Corrupt Organizations Act known as RICO.

21    The defendants have entered a plea of not guilty to each

22    count with which they have been charged and are presumed

23    to be innocent.

24         The indictment alleges that the defendants

25    are members or associates of the Black Angels gang, a

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   long-standing street gang in Ontario, California.  The

2   Black Angels gang allegedly maintains two subcliques made

3   up of younger members working their way up through the

4   gang.  One of them is the Ontario Varrio Sur or OVS, and

5   the other is Angelitos Negros or Junior Black Angels.

6           The indictment alleges, among other things,

7   that the Black Angels gang and its associates are

8   continuously engaged in the distribution of narcotics

9   including methamphetamine.  The indictment also alleges

10  that the gang taxes the profits of drug dealers and

11  others in the gang's territory which is alleged to be the

12  entire city of Ontario.

13          In addition, the indictment alleges that the

14  Black Angels gang maintains a supply of firearms to

15  enforce the gang's authority.  The indictment charges

16  defendants Rivera, Medina and Prieto with violations of

17  law related to the Black Angels gang and separate crimes

18  for conspiring to distribute, distributing and/or

19  possessing with intent to distribute methamphetamine and

20  other controlled substances.

21          Specifically, defendants Rivera and Medina are

22  charged with violating the RICO act.  Defendants Rivera,

23  Medina and Prieto are all charged with conspiring to

24  violate the RICO act as well as conspiring to distribute

25  methamphetamine and heroin.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1              Defendants Rivera and Medina are also charged

2    with possessing methamphetamine with the intent to

3    distribute that controlled substance.  Defendant Rivera

4    is also charged with distributing methamphetamine with an

5    unlawful possession of a firearm and ammunition.

6              All right.  That is the case.

7              Based upon just what you have heard so far

8    regarding what this case is about, because of something

9    in your personal history or background or that of a close

10   family member, is there something that you heard in here

11   that strikes so close to home, so to the core that you

12   absolutely cannot sit as a potential juror in this case?

13             I see a hand.  Yes, ma'am.  Your name?

14        THE PROSPECTIVE JUROR:  Soussi Kochkerian

15        THE COURT:  Yes.  Ms. Kochkerian.

16        THE PROSPECTIVE JUROR:  Yes.  My husband,

17   ex-husband now, was indicted in 1995 in New York for

18   heroin possession, and it was found not guilty.  But the

19   drama and all the pain that I suffered at that time

20   having my three kids and going through the trial, it was

21   really dramatic.  And I don't think I can serve in a case

22   like this.

23        THE COURT:  Or any criminal case, you mean?

24        THE PROSPECTIVE JUROR:  Any criminal case.

25        THE COURT:  Okay.  And your husband was found not

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    guilty; right?

2         THE PROSPECTIVE JUROR:  He was found not guilty.

3         THE COURT:  You say this was 1995?

4         THE PROSPECTIVE JUROR:  1995 in New York.

5         THE COURT:  Okay.  All right.  Thank you, ma'am.

6              Other hands?

7         THE PROSPECTIVE JUROR:  Yes.  My name is Mario.

8    Last name is Guerrero.  My nephew actually was involved

9    with drugs, and just watching my sister going through the

10   pain, the agony of what he actually went through just

11   really affected the entire family.  And so I am

12   definitely against any type of drugs.

13            So I don't feel that I would be right for

14   this.

15        THE COURT:  Maybe I should have explained

16   something.

17            That offer was not a get-out-of-jury-duty-free

18   card because you are against drugs.  All right.  Let me

19   explain something.  Last week we had a child pornography

20   case.  Everyone is against child pornography so I guess

21   that eliminated the entire room.  No, it does not.

22   Everyone is against drugs and the proliferation of drugs.

23   That does not eliminate the entire room.  Okay.

24            So put those hands down.  That isn't the issue

25   here.  The issue is whether or not the government has

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   sufficient evidence and is able to put on sufficient

2   evidence to prove their case beyond a reasonable doubt

3   against these three people.  That is all.

4          Now, what I was talking about is this.

5   Whether or not a member of your family had been beaten to

6   death by a gang member to the point where you cannot put

7   that out of your system.  There is no way you are going

8   to give a suspected gang member a fair trial.  That is

9   what I am talking about.  Not I am against drugs, I am

10  against crime, I am against all kinds of misdeeds.  That

11  is not what this is about.  All decent society is against

12  that sort of thing.  Okay.

13         Now, based upon what I have just said, hands?

14         Okay.  I have got you.  Yes, ma'am.

15         THE PROSPECTIVE JUROR:  My name is Lan Tran.  My

16  dad is in the hospital since Wednesday for brain and

17  stomach cancer treatment.  I am on call from the hospital

18  and doctor because --

19         THE COURT:  What is your name again.

20         THE PROSPECTIVE JUROR:  Lan Tran.

21         THE CLERK:  54.

22         THE COURT:  You guys have a problem?

23         MR. CEPHAS:  No.

24         THE COURT:  Go up to the third floor.

25         THE PROSPECTIVE JUROR:  My sister-in-law was

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1    killed in 1995 due to a robbery.  Does that --

 2         THE COURT:  I'm sorry for your loss.  I'm sorry.

 3         THE PROSPECTIVE JUROR:  Okay.  But I don't know,

 4    is it gang related or not.

 5         THE COURT:  You are asking me if your sister's

 6    incident was gang related?

 7         THE PROSPECTIVE JUROR:  No.  I don't know.  So I

 8    don't know that my case is related to this one or I mean,

 9    any connection, I mean.

10         THE COURT:  Wait a minute.  When did this happen

11    to your sister?

12         THE PROSPECTIVE JUROR:  1995.

13         THE COURT:  Okay.

14         THE PROSPECTIVE JUROR:  In San Gabriel.  But I

15    don't know that the suspect was gangster or not.  I am

16    just saying.

17         THE COURT:  How are you feeling about that right

18    now about this case?

19         THE PROSPECTIVE JUROR:  No idea.

20         THE COURT:  There you go.  That is all I am

21    looking for.  I want a whole room of people that they

22    don't know.  What I don't want is someone in here saying,

23    oh, no, there is no way I am releasing those people.  We

24    can't have that.  Okay.  I want I don't know.  That is

25    the right answer.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE PROSPECTIVE JUROR:  Okay.

 2          THE COURT:  Thank you.  By the way, yes.

 3          THE PROSPECTIVE JUROR:  Well, family who resides

 4   in Ontario.

 5          THE COURT:  I am going to get there.  I am going

 6   to get there.  And you bring up what you have just done

 7   is exactly what I am going to.

 8          MR. NAVARRO:  Your Honor, I'm sorry.  We need to

 9   have the juror identify herself.  We don't know who she

10   was.

11          THE COURT:  What was your name, ma'am?

12          THE PROSPECTIVE JUROR:  Patricia Yang.

13          THE COURT:  Yang.

14          THE PROSPECTIVE JUROR:  Yes.

15          THE CLERK:  39.

16          THE COURT:  What is important is that we get

17   actually more information from you than less.  What we

18   don't want to have happen and it does happen with

19   alarming regularity is that after a trial is over, it is

20   reported in the newspaper, some interview with a former

21   juror that they either occupied a position or possessed

22   certain information which all the parties would have

23   liked to have been privy to at the beginning of the trial

24   to assess their suitability to sit as jurors.  But then

25   it comes out after the trial, and then we basically have
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   to have a do over.  I would rather have all of this
 2   information now.  We would all like to have all of this
 3   information now.  So tell us too much rather than not
 4   enough.  Be honest.
 5            If you feel -- in fact, I am fairly sure that
 6   I am going to ask some questions that the answers to
 7   which may be embarrassing, not as embarrassing as the
 8   child porn case but embarrassing.  We can discuss your
 9   answers at sidebar.  Okay.  The purpose of this is
10   absolutely not to embarrass anyone.  The purpose of this
11   is to find fair and impartial citizens who can listen to
12   the evidence in this case and decide whether or not the
13   government really has a case, and then I will deal with
14   that later.  But all you are doing is sitting as triers
15   of fact.  That is all.  We are going to listen to the
16   evidence and make a decision as to whether or not the
17   facts are this way or the facts are that way.  That is
18   all.  It is not more than that.
19            And our concern is only with respect to your
20   suitability to sit as jurors in this case.  Now, maybe
21   there is a trial going across the hall that you would be
22   better suited for.  This isn't about whether or not you
23   are good people or bad people.  It isn't about that at
24   all.  It is just about is this the right case for you,
25   are you the right people to sit as jurors for these
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    people.  That is all.

2              Okay.  This is a magnificent opportunity.  It

3    truly is, but whether you are selected or not has no

4    bearing upon whether you are good people or worthy

5    people.  It is not about that.  I am going to ask you

6    questions designed to determine whether or not you just

7    inherently are not suited.  For example, you are the

8    uncle or aunt of one of the parties here.  That is just

9    not going to work.  Okay.  Or that your sister is or

10   brother happens to be one of the prosecuting attorneys.

11   That is just not going to work.  That is inherently

12   biased.  Right.  That is all this is about determining.

13   I am going to ask you those kinds of questions.

14             Now, I am going to give the lawyers an

15   opportunity to ask further questions of you, a bit more

16   subtle.  Again, just answer the questions honestly,

17   please.  Not designed to embarrass you or unnecessarily

18   intrude.  I am not going to do it.  I won't permit the

19   lawyers to do it, and we are going to get through this

20   thing as quickly as possible.  All right.

21        THE PROSPECTIVE JUROR:  Your Honor, were you going

22   to ask people if they didn't want to serve for another

23   reason other than something about the case?

24        THE COURT:  Ask whether they wanted to serve or

25   didn't want to serve?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1              THE PROSPECTIVE JUROR:  Or had an excuse.

 2              THE COURT:  Well, actually, I am surprised that

 3     some things weren't mentioned upstairs or dealt with

 4     upstairs.  Let me explain something.  I get called for

 5     jury duty as well.

 6              THE PROSPECTIVE JUROR:  It is not about time.  I

 7     have a legitimate reason.

 8              THE COURT:  What is your name?

 9              THE PROSPECTIVE JUROR:  Suzanne Benedict.

10              THE COURT:  And what is your reason?

11              THE PROSPECTIVE JUROR:  I don't want to tell the

12     whole room.

13              THE COURT:  All right.  Then I will move on.  I am

14     not exempt from jury duty.  I show up when I get my

15     subpoena.  When I am on jury duty -- you will see there

16     is only one name out there on that door.  The work

17     doesn't continue in here.  There is only one judge

18     assigned to this courtroom and it is me.

19              (The prospective juror exited the courtroom.)

20              THE COURT:  I can't sit here and tell you that it

21     is your civic obligation, but I won't do the same thing

22     when I would not do the same thing.  So do I have other

23     things to do?  Yes, I have other things to do.  Do you

24     have other things to do?  I am sure you do.  But we are

25     going to have to find a way, as I do, to carve out some

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    time.  It is not asked of you often, but it is important.

2              Now, it is expected that we can probably get

3    through it with this thing within two weeks.  That has

4    been the promise, and we will, we will get through this

5    thing in two weeks.  My guess is that Frank upstairs in

6    the third floor has already time qualified you all, that

7    everyone here -- yes, sir.

8              THE PROSPECTIVE JUROR:  Your Honor, I have a

9    business trip scheduled for Thursday of next week which

10   is right on the eighth day limit.  And if this does go

11   beyond that, I will not be able to be hear.

12             THE COURT:  What is your name, sir?

13             THE PROSPECTIVE JUROR:  Mark Raudonis.

14             THE COURT:  Here it is.  41.

15             THE CLERK:  The one that walked out is No. 34.

16             THE COURT:  Okay.  Let's see if it is a problem.

17             Anybody else?  Yes, sir.  Your name?

18             THE PROSPECTIVE JUROR:  Anthony Tran.

19             THE PROSPECTIVE JUROR:  T-R-A-N.

20             THE COURT:  Tran.

21             THE CLERK:  32.

22             THE COURT:  Thank you.  Yes, sir.

23             THE PROSPECTIVE JUROR:  We have a family reunion

24   planned for Christmas week.  I just hope it doesn't go

25   that far.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  So do I.  I have no intention of being
 2   here.  I said dos weeks.
 3          THE PROSPECTIVE JUROR:  My name is Nicole Austin.
 4   I just had a question.  I have two young children, and
 5   child care doesn't pay for after 4:30 and I don't have
 6   the money to pay for it so I was just wondering --
 7          THE COURT:  You bring up an interesting point.  I
 8   am going to mention this now.  I am just going to throw
 9   it out.  We usually mention this to a much smaller group,
10   the jury.  What we do in this courtroom is we offer the
11   jury the option of setting the hours.
12              I don't know why, but absolutely 100 percent
13   of the time, the jury opts for the early schedule where
14   they are out at 2:30 in the afternoon.  Okay.  I am just
15   throwing that out there.  But all right.
16              Anybody else?  Yes, ma'am?
17          THE PROSPECTIVE JUROR:  I am Coleen Wolfe, and I
18   live in San Luis Obispo.  My husband just went to
19   Michigan because his father is dying and I left my
20   two teenagers at home.  Two weeks for them to be there by
21   themselves is a bit daunting.
22          THE COURT:  Oh.  I am sure they have good parents.
23          THE PROSPECTIVE JUROR:  They do.
24          THE COURT:  I am sure they are going to be fine.
25          THE PROSPECTIVE JUROR:  Anyway, I am concerned
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   about that.
 2          THE COURT:  Are you now.
 3          THE CLERK:  5.
 4          THE COURT:  How old you are the kids?
 5          THE PROSPECTIVE JUROR:  20 and 16.  I know.  I
 6   know.  But you know how my 16 year old is.  She is kind
 7   of attracted --
 8          THE COURT:  I am going to do a book on excuses.
 9          THE PROSPECTIVE JUROR:  So sorry.
10          THE COURT:  Okay.  All right.  We are going to
11   start this process seriously now.
12             Go ahead.
13          THE CLERK:  When I call your name, if you can step
14   forward and take a seat in the box.
15             Number 1, Jorge M. Alvarez.
16             Janice Spence.
17             Jamela Gurican.
18             Mumei Wang.
19             Coleen F. Wolfe.
20             Thomas C. Hecht.
21             Candace Lowry.
22             Debra Cohen.
23             Karan Slingerland.
24             Claire Cruz Benavente.
25             Mark M. Rodriguez.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1              Nelson C. Willis.

2              Soussi Kochkerian.

3              Pete G. Roble.

4              Tony Diep.

5              Gary Deryl Jordan.

6              Gerald A. Williams.

7              Francisco A. Cruz.

8              Nichole Austin.

9              Brendan Edward Langley.

10             Bruce Honeybourne.

11             Teresa Newton Rathsam.

12             Joanne Gilbert.

13             Charles A. Bancroft.

14             Sherman Wang.

15             Nora C. Davis.

16             Mario A. Guerrero.

17             Maritere Satterlee.

18             Ronald J. Zanon.

19             Brian D. Viggianelli.

20             Anthony Tran.

21             Sharra L. Updike.

22             Suzanne Benedict.

23        THE PROSPECTIVE JUROR:  Here.  What do you want?

24        THE CLERK:  Can you sit right at the end of the

25   second row.
```

```
 1        THE PROSPECTIVE JUROR:  I just realized I lost my

 2   library book.  Oh, God.

 3        THE CLERK:  And Jeremy Bowditch.

 4            And, Ms. Benedict, if you could scoot over so

 5   Mr. Bowditch could sit there.  Thank you.

 6            We are going to have one more person.  Okay.

 7   If I could have Mr. Bradley Van Dyne.

 8        THE COURT:  All right.  First things, ladies and

 9   gentlemen, I -- well, let me introduce the courtroom

10   staff as well.  I am going to have the lawyers introduce

11   themselves and those seated at counsel table with them,

12   and we are also going to read to you from the trial

13   witness list.  We will try to provide as much identifying

14   information as we can so you can ascertain whether or not

15   anyone who is scheduled to be a witness in this case is

16   someone personally known to you.  And if so, then you

17   will raise your hands.

18            I am Judge Otis Wright.  The boss of the

19   courtroom is Ms. Sheila English.  The official court

20   reporter is Katie Thibodeaux.

21            And the government, plaintiff in this case, is

22   represented by Assistant United States Attorneys, and the

23   defendants are represented by their respective individual

24   defense counsel.  And they are seated to your left.

25            Beginning with the government, introductions
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    of everyone at counsel table plus the reading of your
 2    witness list.
 3         MS. EL-AMAMY:  Good morning.  My name is Reema
 4    El-Amamy.  I represent the government along with Michael
 5    Dore.  He also represents the government.  This is Steve
 6    Walton.  He works for the Drug Enforcement
 7    Administration.
 8              We have a witness list as well.  It has a
 9    number of people so bear with me, please.  From the San
10    Bernardino Police Department, Imran Ahmed.  Ontario
11    Police Department, Maynor Arana.  Ontario Police
12    Department, Joshua Burks.  Upland Police Department,
13    Travis Cotton.  Ontario Police Department, Brice Devey.
14    Ontario Police Department, Matthew Gonzalez.  San
15    Bernardino County Sheriff's Department, Erdem Gorgulu.
16    Ontario Police Department, Travis Hartman.
17              Spanish Language Specialist, Juan Lemus.
18    Ontario Police Department, Michael Lorenz.  David Navarro
19    from Ontario, California.  Ontario Police Department,
20    Christopher Martinez.  San Bernardino Police Department,
21    Brian Olvera.  Drug Enforcement Administration, Steve
22    Paris.  Wiretap Technician, Michael Precup.  Ontario
23    Police Department, Ron Watson.  Ontario Police
24    Department, Westley Willemstyn.  And Ontario Police
25    Department, Darren Williams.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Thank you, counsel.  Mr. Cephas,
 2   beginning with you, sir.
 3          MR. CEPHAS:  Good morning, my name is Dana Cephas.
 4   I represent Raul Prieto.  And, your Honor, there are
 5   three additional Ontario Police Department officers I may
 6   call.
 7          THE COURT:  Okay.
 8          MR. CEPHAS:  Scott Kocab, Anthony Ortiz and Paul
 9   Burdnick, all from Ontario Police Department.
10          THE COURT:  And seated with you at counsel table?
11          MR. CEPHAS:  And seated with me at counsel table
12   is my client Raul Prieto.
13          THE COURT:  All right.  Thank you.
14             Mr. Walsh.
15          MR. WALSH:  I am Joseph Walsh, and seated next to
16   me to my right is my client Jessica Medina.
17          THE COURT:  All right.  Thank you, sir.
18             Mr. Navarro.
19          MR. NAVARRO:  Good morning.  My name is Angel
20   Navarro.  I am an attorney in Los Angeles.  This is my
21   client Carlos Rivera.
22          THE COURT:  All right.  Thank you, sir.
23             Now that you have been introduced to
24   everyone who is going to be in the courtroom for the
25   foreseeable future, any recognition of even people on the
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   witness list?  No hands.  All right.  Excellent.

2               Now, each of you has a -- well, maybe you do,

3   maybe you don't.  Certainly, on the monitors you see a

4   list of questions.  We would like each of you to provide

5   the information on the screen to those questions, and

6   when you get to the residence, of course, city of

7   residence.  We are only looking for the city.  We are not

8   looking for your home address.

9               By the way, in that regard, we have got a list

10  of your names and the cities that you currently live in.

11  We would also be interested in knowing whether or not any

12  of you have previously resided in the city of Ontario.

13  Okay.

14              Go ahead, sir.

15          THE PROSPECTIVE JUROR:  My name is Jorge Mario

16  Alvarez.  I live in Lancaster, California.  I am

17  eligibility worker.  Work for LA County.  I am married.

18  Three children.

19              My wife is a housewife.  All my children go to

20  school.  Yeah.  I served on a jury before in a civil and

21  criminal, and we reached a verdict both of the times.

22              I don't have no members of family in law

23  enforcement.  No. 8, no.  No. 9, no.

24          THE COURT:  Thank you, Mr. Alvarez.  Now, if you

25  will pass the microphone to your right.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        THE PROSPECTIVE JUROR:  My name is Janice Spence.

 2   I live in Long Beach.  I am a waitress for two years at

 3   the same place.  I am single.  I have no children.

 4             I have never served on a jury before.  My mom

 5   and dad both served for the military.  I don't know if

 6   that counts as law enforcement.  I haven't had any family

 7   members have negative encounters.  And no family members

 8   have been subject of criminal investigation.

 9        THE COURT:  All right.  Thank you, Ms. Spence.

10        THE PROSPECTIVE JUROR:  Hello.  My name is Jamela

11   Gurican.  I am from Los Angeles.  I am a product manager

12   for a bank in L.A.  I am married.  No children.  And I

13   have not served on a jury before.

14             No on No. 7.  No on No. 8.  And yes on No. 9.

15        THE COURT:  All right.  Thank you.

16             You said yes on No. 9?

17        THE PROSPECTIVE JUROR:  Yes.

18        THE PROSPECTIVE JUROR:  My name is Mumei Wang.

19   And I live in Rowland Heights, and I am working for L.A.

20   Superior Court.  For how long, for 12 years.  And I am

21   married.  My husband is retired.  I have one son in

22   college.  I have never served on the jury before.  No to

23   question No. 7.  No to question No. 8.  And no to

24   question No. 9.

25        THE COURT:  Thank you.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE PROSPECTIVE JUROR:  You are welcome.

 2          THE PROSPECTIVE JUROR:  I am Coleen Wolfe, and I

 3   live in San Luis Obispo.  I am a nurse practitioner in

 4   the present job for a year-and-a-half.

 5              My husband works for a nonprofit with mentally

 6   ill.  He also serves at the prison.  We have CMC up

 7   there.  I have two children which you all know about.  I

 8   have never been on a jury before.  No family members or

 9   close friends in law enforcement.  8 and 9, negative.

10          THE COURT:  Thank you, Ms. Wolfe.

11          THE PROSPECTIVE JUROR:  My name is Thomas Carson

12   Hecht.  I live in Manhattan Beach.  I am an electrical

13   engineer.  I have been an engineer for 37 years.  My wife

14   is also an engineer.  I don't have grown children.

15              I have served on two criminal juries, and both

16   times they reached verdicts.  No family members in law

17   enforcement.  No on 8 and 9.

18          THE COURT:  Thank you.

19          THE PROSPECTIVE JUROR:  My name is Candace Lowry,

20   and I live in Covina.  I am currently working in risk

21   management at a bank.  And I have been there for 12

22   years.  I am not married.  Two children.  My daughter is

23   30, and she is a GM for Gap, Inc..  And my son is a chef.

24              Never been on a jury before.  My next door

25   neighbor is actually a police officer for Glendora.  And
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   no to both 8 and 9.

 2          THE COURT:  Thank you.

 3          THE PROSPECTIVE JUROR:  My name is Pete Roble also

 4   known as Pedro Roble.  I live in the city of Downey.  And

 5   I have never lived in Ontario before.  I am currently

 6   retired for five years, and before that I worked as

 7   supervising auditor in L.A. Unified School District.  I

 8   am married, and my spouse is registered nurse.  I have

 9   three grown children, and my eldest daughter is a

10   director of the L.A. County Museum.  The second one, the

11   daughter is a vice-president of an advertising company.

12   My third son just passed the California bar exams, and I

13   have served as an alternate juror before.  And my answer

14   to 7, 8 and 9 is no.

15          THE COURT:  Thank you, sir.

16          THE PROSPECTIVE JUROR:  My name is Soussi

17   Kochkerian.  I live in Burbank, California.  And my

18   current occupation is an escrow officer, and I have been

19   in this job for two weeks.  I'm sorry.  I have -- I am

20   single, and I have three childrens.  My oldest one owns a

21   tire store.  My second and my son, they go to college.  I

22   never served in a jury.  And a family member, my son

23   right now is in trial.  He is going through for assault,

24   and his trial is going to be on the 10th of this month.

25              Any member of your family, yeah.  And then No.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    9, same question, the same answer, about my son's case.

2          THE COURT:  All right.  Thank you.

3          THE PROSPECTIVE JUROR:  My name is Nelson Clay

4    Willis.  I live in Santa Barbara.  I am currently a

5    self-employed investor for 60 years.  Let's see.  I am

6    married.  I have one step-daughter and two sons.  The

7    stepdaughter is a hair stylist in Santa Barbara.  My

8    eldest son is an architect working for a firm in Japan

9    and also for a software start up company in San

10   Francisco.  My youngest son is maybe getting a job at a

11   venture philanthropy company in Oakland.  I have never

12   served on a jury.  I have been standing here before but

13   never got selected.

14              I have a -- my brother-in-law is a superior

15   court judge or was a superior court judge in Honolulu.

16   My sister-in-law was a federal, not federal, I believe

17   state prosecutor in Honolulu and worked for the state

18   district attorney.  My cousin is a United States Senator.

19   I have never had negative encounters with the criminal

20   justice system, and I have never been the subject of a

21   criminal investigation.

22         THE PROSPECTIVE JUROR:  Mark Rodriguez.  Valencia.

23   Unemployed, single, no kids.  Never served on a jury

24   before.  7, 8 and 9 are no.

25         THE COURT:  Thank you.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1           THE PROSPECTIVE JUROR:  My name is Claire Cruz

2     Benevente.  Live in Simi Valley.  I have never lived in

3     Ontario.  AVP at a bank for about 10 years.  Married.  My

4     husband is unemployed.

5                Children are in school.  Number 6, 7 and 8 and

6     9 are no.

7           THE PROSPECTIVE JUROR:  Karan Slingerland.  I live

8     in Bellflower.  My current occupation, I am a project

9     manager for a computer training company.  I am single, no

10    children.  I had served on a jury before.  It was a civil

11    case, and a verdict was reached.

12               And no to 7, 8 and 9.

13          THE COURT:  Thank you.

14          THE PROSPECTIVE JUROR:  Debra Cohen.  Burbank

15    California.  I am a teacher.  Single.  6 through 9, no.

16          THE COURT:  6 through 9.

17          THE PROSPECTIVE JUROR:  Never served on a jury.

18          THE COURT:  Wow.  Okay.

19          THE PROSPECTIVE JUROR:  My name is Tony Diep.  I

20    live in San Gabriel.  I am a chef at my mom's restaurant.

21    I am single.  No.  I have been on the jury before, and it

22    went to mistrial.  7, 8 and 9, no.

23          THE COURT:  Thank you.

24          THE PROSPECTIVE JUROR:  Good morning.  My name is

25    Gary Jordan.  I live in Paso Robles, California.  My

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1   current occupation, I am a retired internal affairs

 2   investigator for the Department of Corrections, State of

 3   California.  I am currently a pastor of a church in Paso

 4   Robles.  My wife is a correctional counselor at a state

 5   prison here in the state.

 6              I have four grown children.  My oldest

 7   daughter is a correction officer at a state prison.  My

 8   oldest son works in the oil fields in North Dakota.  My

 9   youngest daughter works for Starbucks.  My youngest son

10   is in the retail business.  I have never served on a

11   jury.  Family members in law enforcement, my wife and my

12   oldest daughter.  And no to 8 and 9.

13        THE COURT:  All right.  Thank you, Mr. Jordan.

14        THE PROSPECTIVE JUROR:  My name is Gerald Allan

15   Williams, San Luis Obispo, California.  Been in

16   construction for 38 years.  My wife is retired.  I have

17   two grown children.  One is in construction.  The other

18   is an architect.  I have served on a criminal jury, and

19   we reached a verdict.

20              7, 8 and 9, answer no.

21        THE COURT:  Thank you.

22        THE PROSPECTIVE JUROR:  My name is Francisco Cruz.

23   I live in Los Angeles.  I am being a carpenter for 33

24   years.  I am married.  My wife is a nurse aide.  I have

25   six kids.  First one is housewife.  Second one is

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    computer technician.  Third one works in Ralphs.  And the

2    other one just started studying to be a chef.  The other

3    one is in high school, and another daughter is married.

4    I have three grandkids.  From 6 to 9, no.

5          THE COURT:  Thank you.

6          THE PROSPECTIVE JUROR:  My name is Nicole Austin.

7    I live in Pasadena.  I am a special education school bus

8    driver for 13 years.  Not married.  Two kids, both in

9    elementary school.

10             I have never served on a jury.  I have a few

11   family members that are in law enforcement and my best

12   friend.  My aunt is a detective for the Pasadena Police

13   Department.  My cousin is an L.A.P.D. officer, and my

14   best friend is a Los Angeles Sheriff Deputy.  8 and 9,

15   no.

16         THE COURT:  Thank you, Ms. Austin.

17         THE PROSPECTIVE JUROR:  My name is Brendan

18   Langley.  I am from Santa Barbara.  I work as a film and

19   social media coordinator for a housing company there for

20   about two years.  I am not married.  I don't have any

21   children.  I have never served on a jury.  7, 8 and 9,

22   no.

23         THE COURT:  Okay.

24         THE PROSPECTIVE JUROR:  My name is Bruce

25   Honeybourne.  I live in La Mirada.  I do CT scanning in

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    the medical field.  I am married.  I have three children.

2    They are in college right now, three of them, or two, one

3    is out.  I have never served on a jury.  And I have

4    two close friends that are deputy sheriffs.  No to No. 8,

5    and no to No. 9.

6         THE COURT:  Thank you.

7         THE PROSPECTIVE JUROR:  My name is Teresa Rathsam.

8    I live in Simi Valley.  I am a program director at a day

9    program for adults with developmental and physical

10   disabilities and have been for 19-and-a-half years.  My

11   husband is a safety manager at a warehouse.  I have

12   two small school children.

13         I never served on a jury.  My father was a

14   Washington state trooper.  And 8 is yes, and 9 is yes.

15         THE COURT:  Okay.

16         THE PROSPECTIVE JUROR:  My name is Joanne Gilbert,

17   and I am from the city of Northridge.  My current

18   occupation is I am a research clinical trials manager.  I

19   have been working for 13 years in that capacity.  My

20   husband -- I am married.  My husband is a university

21   professor.  I have three grown children.  One is a

22   special education coordinator in a middle school.  The

23   other is an engineer, and the third is a research

24   analyst.

25         I have served on a jury in a civil case, and

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  we were able to reach a verdict.  I have a close friend

2  who is in law enforcement as an investigator.  And 8 and

3  9 are no.

4      THE PROSPECTIVE JUROR:  Charles Anderson Bancroft.

5  Long Beach.  I am a longshoreman for Pacific Maritime

6  Association.  Girlfriend that works in shipping and

7  receiving.  No children.  Never served on a jury.  My

8  grandfather was an Alameda County superior judge.  My

9  father graduated from Berkeley with a law degree.  I was

10 arrested about four years ago.  And 9, no.

11     THE COURT:  Thank you.

12     THE PROSPECTIVE JUROR:  Sherman Wang.  Los

13 Angeles.  I am a department administrator and also

14 project manager, 28 years.  Married.  Spouse is a life

15 coach.  One child.  College, I have served on a civil

16 case.  It was dismissed.  I have an acquaintance that is

17 a police officer.  And 8 and 9, no.

18     THE COURT:  Thank you, Mr. Wang.

19     THE PROSPECTIVE JUROR:  My name is Nora Davis.  I

20 live in Santa Monica.  I am a student of three years.  I

21 am married.  I have no children.  I have never served on

22 a jury.  I have a close friend who is a police officer in

23 Baltimore.  And no to 8 and 9.

24     THE COURT:  Thank you.

25     THE PROSPECTIVE JUROR:  Name is Mario Alberto

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Guerrero.  I currently live in Santa Barbara.  I am a

2    customer service manager for a local bank.

3         THE COURT:  I am going to have to interrupt you.

4    We are going to have to take a break.  Okay.  I am going

5    to read to the jury from the Ninth Circuit Model Jury

6    Instructions, specifically, instruction 2.1 so you don't

7    have to take this.

8         (The court reads Instruction 2.1 to the prospective

9          jurors.)

10        (Recess from 10:31 to 10:50 a.m.)

11        (The following proceedings were held in the

12         presence of the prospective jurors:)

13        THE COURT:  All right.  Back on the record.  The

14   record will reflect that the prospective jurors are here,

15   all defendants are here as are all counsel.

16             Did we leave off with Mr. Guerrero?  Yes, we

17   did.  Sorry for the interruption, sir.

18        THE PROSPECTIVE JUROR:  Mario Alberto Guerrero.  I

19   live in Santa Barbara.  Customer service manager for a

20   bank.  Yes, married.  I have two children.  One in

21   college, one about to graduate from high school.  No to

22   6.  No to 7.  No to 8, and no to 9.

23        THE COURT:  All right.  Thank you, sir.

24        THE PROSPECTIVE JUROR:  My name is Maritere

25   Satterlee.  I am from San Bernardino.  I work at Santa

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Barbara City College for nine years.  I am married.  My

2    husband is retired.  He was a high school teacher.  I

3    have two grown children.  The oldest is a musician and

4    has his own business.  The youngest is a musician too,

5    and he is an engineer.  I have never served on a jury.

6    And 7, 8 and 9, no.

7         THE COURT:  All right.  Thank you, ma'am.

8         THE PROSPECTIVE JUROR:  I am Steve Gramme from

9    Thousand Oaks, California.  I am a consultant for Lexis

10   Nexus.  Clients including federal, state and local courts

11   and law enforcement.  Married.  No children.  I have

12   never served on a jury.  My cousin's wife is a clerk of

13   the court for U.S. federal court in San Diego.  No for 8

14   and 9.

15        THE COURT:  Thank you.

16        THE PROSPECTIVE JUROR:  I am Ronald Zanon.  I live

17   in Long Beach.  I am currently a maintenance supervisor

18   for LADWP for 26 years.  Divorced, two children.  One is

19   a courier for Fed Ex.  One is a senior in high school.

20   Served on a jury once before, a civil case.  We did reach

21   a verdict.  I have an uncle who is a federal officer in

22   Colorado.  No for 8, and no for 9.

23        THE COURT:  Thank you.

24        THE PROSPECTIVE JUROR:  My name is Brian David

25   Viggianelli.  I am from Santa Clarita, California.  I

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   work for the House of Representatives.  A little under a
 2   year.  I am not married.  Have no children.  Never served
 3   on a court before.  No, 7.  No, 8 and 9.
 4          THE PROSPECTIVE JUROR:  My name is Anthony Tran.
 5   I live in the city of Arcadia.  My current occupation is
 6   building code enforcement and construction oversight for
 7   the State of California.  I have been there for about
 8   six years.  I am married, two children.  One in
 9   elementary school, and one in middle school.  I never
10   served on jury before.  And no to 7, 8 and 9.
11          THE PROSPECTIVE JUROR:  My name is Sharra Updike.
12   I live in Burbank.  I am an account executive in Digital
13   Cinema, and I have been doing it for six years.
14              I am married.  My husband is an editor.  We
15   have one small child.  I have served on a jury before,
16   and it was a civil trial, and we did reach a verdict.  No
17   to 7 through 9.
18          THE PROSPECTIVE JUROR:  Suzanne Benedict, Los
19   Angeles, California.  Research assistant.  Widow.  One
20   17-year-old son.  No.  No.  No.  No.
21          THE COURT:  Is there something you wanted to talk
22   about?
23          THE PROSPECTIVE JUROR:  Pardon?
24          THE COURT:  Was there something you wanted to talk
25   about?  The urgency is gone?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        THE PROSPECTIVE JUROR:  I don't know what you are

 2   referring to.

 3        THE COURT:  That is why I was headed to the

 4   sidebar.

 5             Do you no longer wish to talk about it?

 6        THE PROSPECTIVE JUROR:  Oh.  You mean you want to

 7   talk about it now?

 8        (The prospective juror entered the well.)

 9        THE CLERK:  Excuse me, ma'am.  Do not walk there.

10   No.  Calm down.  Do not walk through here, again.

11        THE PROSPECTIVE JUROR:  I did not know that.

12        THE CLERK:  Well, if you just calm down.  Do not

13   represent me or my courtroom.

14        THE PROSPECTIVE JUROR:  The word is disrespect, I

15   think.

16        THE CLERK:  You know what I mean.

17        (The following proceedings were held at sidebar

18         outside the presence of the prospective jurors:)

19        THE PROSPECTIVE JUROR:  So I don't want to be on

20   this jury because I have bipolar syndrome.

21        THE COURT:  Okay.  Are you on medication?

22        THE PROSPECTIVE JUROR:  Uh-huh.

23        THE COURT:  How does that work?  How well does it

24   work?

25        THE PROSPECTIVE JUROR:  Sometimes it works.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    Sometimes it doesn't.  Like right now, it is not working
 2    really well.
 3         THE COURT:  Okay.  Then tell you what, you can
 4    return to the third floor.  You are certainly excused
 5    from this trial.  All right.
 6         THE PROSPECTIVE JUROR:  Uh-huh.
 7         THE COURT:  That is out that door up the
 8    escalator.
 9         THE PROSPECTIVE JUROR:  Which way am I allowed to
10    walk?
11         THE COURT:  In case, Katie, you didn't get it for
12    the record, she indicated that she has bipolar disorder
13    and that the medication she is taking is not always
14    effective.  I can attest to that.
15         (The following proceedings were held in the
16          presence of the prospective jurors:)
17         THE COURT:  Fill that seat.  Okay.
18         THE CLERK:  You want one more in the place of?
19         THE COURT:  Yes.
20         THE CLERK:  If I can have Jennifer Carpenter.
21         THE PROSPECTIVE JUROR:  My name is Jennifer
22    Carpenter.  Live in Santa Monica.  Currently unemployed.
23    I was a stay-at-home mom for 23 years.  22 months as a
24    political report specialist and quit about three weeks
25    ago because I got bored.  Sorry.  Married.  Have
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    four children.  Ages 16 to 25.  Two  in college, oldest

2    is at Hertz, and youngest is a sophomore in high cool.

3           Have never served on a jury.  It pleaded out

4    or something.  I don't really know.  We never had to go

5    to jury.  Nobody in law enforcement.  Nothing with

6    negative criminal justice system.  And no, no criminal

7    investigations.

8           THE COURT:  All right.  Thank you.

9           THE PROSPECTIVE JUROR:  My name is Jeremy

10   Bowditch.  I live in L.A..  I am an editor.  Not married.

11   No kids.  And no to the rest.

12          THE COURT:  Thank you.

13          THE PROSPECTIVE JUROR:  My name is Brad Van Dyne.

14   I live in Palmdale.  I am an air traffic controller for

15   23 years.  I am married.  My wife is just a housewife

16   now.  She has quit her job.  I have three grown children,

17   and they are -- one is a manager at a retail store, and

18   the other one is a baker.  And the other one does

19   accounts for a construction office.  I have served on

20   two juries, once as an alternate, and once on the jury.

21   Criminal, both.  And they did reach a verdict.

22          I have a few friends in law enforcement, well,

23   most of them are retired now.  So they are not in there

24   anymore.  No negative encounters and never been subject

25   to a criminal investigation.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  All right.  Thank you, sir.

 2          All right.  Obviously, I am -- well, we are

 3   all interested in knowing whether or not any of you have

 4   connections to the city of Ontario, whether the city of

 5   Ontario is a business client, whether you formerly worked

 6   for the city of Ontario, whether or not anyone in your

 7   family worked for the city of Ontario, whether or not

 8   close personal friends or members of your family live or

 9   did live in the city of Ontario.

10          Anyone with any kind of connection with the

11   city of Ontario, but I would like to limit it -- thank

12   you.  I would like to limit it to the people in the jury

13   box and those first two rows.  All right.

14          Hands?  No hands.

15          Okay.  A number of you have friends and or

16   family members with connections to law enforcement or are

17   members of law enforcement, and one is a federal officer.

18   And, obviously, we are going to have a number of people

19   from law enforcement testifying in this case.  What the

20   defense wants to know, I guess what we all want to know

21   is whether or not any of you are unable to give law

22   enforcement testimony the same level of importance as

23   nonlaw enforcement witnesses.  In other words, no greater

24   weight will be accorded their testimony, that you won't

25   simply conclude without careful examination and scrutiny
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    whether or not their testimony sounds truthful, sounds

2    credible.  Or will you put everyone through that same

3    crucible of determining the believability of their

4    testimony.  Does law enforcement get an advantage.

5           Let me make, I am going to make one carve out.

6    We can all assume that law enforcement officers while

7    they are conducting their investigations and certainly

8    while they are in the process of whatever activities are

9    involved in in making an arrest are probably making

10   careful note of certain things, distances, times, a lot

11   of descriptive things that may prove relevant later on,

12   and they may make contemporaneous notes of those things.

13   And, of course, they will then refer to their notes or

14   reports prior to testifying in court.  Now, yes, they

15   will probably have a much better recollection of those

16   things that they actually made notes of much better than

17   you and I who have not made any notes and are trying to

18   recall something from many months ago.

19           Putting that aside, is there anyone here who

20   just simply gives much greater credence to testimony from

21   law enforcement personnel simply because they are law

22   enforcement personnel?

23        THE PROSPECTIVE JUROR:  I'm sorry.  Can you repeat

24   the question?

25        THE COURT:  Are you kidding me?  You get out of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    here.

2         (Laughter.)

3         THE COURT:  All right.  I don't have any notes

4    here that you have got any close friends or family

5    members in law enforcement.

6         THE PROSPECTIVE JUROR:  No.

7         THE COURT:  Then, for any other reason, do you

8    happen to -- do you tend to believe that law enforcement

9    officers will tend to be more truthful on the stand than

10   nonlaw enforcement personnel?

11        THE PROSPECTIVE JUROR:  I don't think so.

12        THE COURT:  Okay.  Anybody?

13        THE PROSPECTIVE JUROR:  Not to say that I would

14   give law enforcement either more weight or less weight,

15   but I would certainly consider it different than someone

16   else that wasn't in that position.

17        THE COURT:  Can you explain?

18        THE PROSPECTIVE JUROR:  I feel like -- it is a

19   different position than an ordinary citizen

20   eye-witnessing something.  So I would -- I think I would

21   give it a different kind of consideration than an

22   ordinary citizen.

23        THE COURT:  Like an ordinary investor?

24        THE PROSPECTIVE JUROR:  Yes.

25        THE COURT:  They tend to be more credible than

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    ordinary investors?

2         THE PROSPECTIVE JUROR:  I just think I would

3    consider it differently.  It would color.  It would have

4    a different color to it.

5         THE COURT:  When you say consider it differently,

6    what do you mean?

7         THE PROSPECTIVE JUROR:  By virtue of their

8    training, employment, position, I would weigh that in my

9    consideration of their testimony.  And I am not saying

10   that would give them more credibility or less

11   credibility, it would just give me a different reference

12   point from them compared to an ordinary citizen to have

13   that training and position.

14        THE COURT:  All right.  Anybody else on this issue

15   of law enforcement?  Okay.  Let me skip to something

16   else.

17            I heard that a couple of you have teenagers.

18   Any of you willing to admit openly or we can do it at

19   sidebar whether or not your teenagers or any teenagers in

20   your family have, let's put it this way, themselves, have

21   friends who are members or associates of street gangs?

22   Maybe not themselves but know people who are?  Any hands?

23            Anybody in here, themselves, close family

24   member, personal friends ever been victimized by members

25   of a street gang?  No hands.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              Anybody here, themselves, family members,

 2   close personal friends ever had their property defaced by

 3   graffiti?  Uh-huh.

 4              Long Beach?

 5         THE PROSPECTIVE JUROR:  Yes.

 6         THE COURT:  I'm sorry.  Yes.  Ms. Spence.

 7         THE PROSPECTIVE JUROR:  Oh.  It just happens that

 8   I live in an area where there are gang members, and they

 9   like to like do the turf thing.  So on like fences in our

10   neighborhoods, they will, like, write their gang symbols.

11   And, like, I have called a couple of times to have them

12   removed because I just think it is ugly and disgusting so

13   just my preference on that with the graffiti.

14         THE COURT:  What if there are allegations in this

15   case that the defendants may be affiliated with criminal

16   street gangs?  Is that going to affect your ability to be

17   fair and impartial as you weigh the evidence to reach a

18   decision as to whether or not the government has proved

19   its case against these individuals?

20         THE PROSPECTIVE JUROR:  I think that I can

21   definitely still be impartial about it because somebody

22   spraypainting a fence is a little bit different than

23   somebody selling drugs and carrying weapons.

24         THE COURT:  Okay.  Thank you.

25         THE PROSPECTIVE JUROR:  I have a commercial
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    property in Santa Monica that is constantly getting
 2    graffitied that has cost me a considerable amount of
 3    money to repair.  They scratch large plate glass windows.
 4    And I am always concerned about property value, and I
 5    feel that that diminishes my property value.
 6            THE COURT:  Okay.  Mr. Willis, same question that
 7    I asked Ms. Spence, how is that going to affect your
 8    ability to simply weigh the evidence that the government
 9    is going to produce and make a fair and impartial
10    determination as to whether or not it has a case and has
11    proved its case against these three individuals?
12            THE PROSPECTIVE JUROR:  That graffiti, the crimes
13    against me, I don't think would affect it.  If I were
14    convinced the defendants were gang members, that may
15    color my view of them.
16            THE COURT:  All right.  It is not about -- I am
17    going to make something clear not just to you,
18    Mr. Willis, but for everyone.  This isn't about would I
19    like to go to dinner with these people.  Okay?
20            THE PROSPECTIVE JUROR:  I understand.
21            THE COURT:  All right.  Not about that at all, and
22    nor will a vote either way require that you do so.  This
23    is about has the government proven each and every one of
24    the elements necessary to establish these crimes.  That
25    is all.  Can you do that?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1           THE PROSPECTIVE JUROR:  Your reading of what you
 2    read first?
 3           THE COURT:  Yes.
 4           THE PROSPECTIVE JUROR:  Maybe I misunderstood it.
 5    It seemed like one of their crimes was being a gang
 6    member according to the RICO statutes.  Is that true?  Is
 7    one of the crimes being gang members?
 8           THE COURT:  All right.  One of the things that you
 9    are going to have to determine, all right, is their
10    status within this organization.  You are going to have
11    to up or down with respect to that.  They either belong
12    to or they do not belong to this organization, gang.
13           THE PROSPECTIVE JUROR:  Is that a crime?
14           THE COURT:  It depends on the nature and
15    characteristics of the organization.  You belonging to a
16    church is probably okay.  You belonging to other
17    enterprises which are solely engaged in committing crimes
18    probably isn't okay.
19              So your status is going to be important.  The
20    determination of their status is an issue for you.  Now,
21    simply because they are accused and simply because your
22    property has been victimized, are you going to somehow do
23    some strange calculus and go my property has been
24    damaged, they have been accused of being part of an
25    organization that vandalizes, tag, you are it, and I am
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    going to vindicate my damaged property?
 2           THE PROSPECTIVE JUROR:  No, I am not.  But if
 3    being a gang member is a crime and they prove that, I
 4    would be willing to, you know, convict them if that is
 5    indeed the crime, being a gang member and that was proven
 6    to me.
 7           THE COURT:  All right.  Just being a gang member
 8    isn't a crime.  All right.
 9           THE PROSPECTIVE JUROR:  Okay.  So if they are
10    proven gang members --
11           THE COURT:  Oh, gosh.  Being a gang member per se
12    is not a crime.  All right?  There are gangs and there
13    are gangs.  Knights of Columbus is sort of a benign gang,
14    but, you know, it is not a crime simply belonging to an
15    organization.
16           THE PROSPECTIVE JUROR:  I understand that.
17           THE COURT:  The purpose, function, daily
18    activities, et cetera, of this organization, okay, that
19    may be criminal, and that is why we talked about RICO.
20    All right.  And if this is an enterprise that it is
21    devoted to or engaged in criminal activities and you are
22    part of that enterprise, then you have a problem.  That
23    will be what you have to determine but based upon what
24    you hear in court.
25           THE PROSPECTIVE JUROR:  What you are asking me is
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1     I -- again, I want to be clear.  If there is no other --
 2     I believe I read there was somebody accused of carrying a
 3     firearm.  So that is not proven, but it is proven that he
 4     is just a gang member and has not committed any other
 5     actions other than belonging to this gang and the gang
 6     has proven to me that it is a criminal activity and this
 7     man belongs to it, is that a crime?
 8            THE COURT:  Okay.  Let me first say, we are
 9     getting so far ahead of ourselves it is not funny.  All
10     right.  And I don't even want to come close to answering
11     that question.  Let me simply ask you this.  Your
12     property has been vandalized.  You probably aren't even
13     sure who did it?
14            THE PROSPECTIVE JUROR:  I have no idea.
15            THE COURT:  It may have been a retired nun who
16     sneaks around at 3:00 o'clock in the morning.
17            (Laughter.)
18            THE PROSPECTIVE JUROR:  Well, the police
19     department when I called them said, well, it is this gang
20     and that gang.
21            THE COURT:  May have been a rival police
22     department.  Anyway, here is the deal.  I just want to
23     know, we all want to know whether or not that has
24     affected you so deeply that you simply will vote to
25     convict anyone who is even accused of being in a gang
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    because you think, my God, you are no different than the

2    people who vandalized my property.

3            THE PROSPECTIVE JUROR:  No, I don't think so.

4            THE COURT:  That is all I was getting at.  All the

5    rest of this, forget that conversation.  Okay.

6                Anybody else, any connections with Ontario,

7    anybody here who themselves feels they have been

8    victimized by gang activity?

9                All right.  Let's talk about some of the

10   negative encounters with law enforcement.

11                Ms. Kochkerian, your son is going to -- he

12   is going to be going to trial.  So far, do you feel he

13   has been treated fairly by the system?

14           THE PROSPECTIVE JUROR:  No.

15           THE COURT:  You do not feel he has been treated

16   fairly by the system?

17           THE PROSPECTIVE JUROR:  No, I do not.

18           THE COURT:  Now, the system, and it is a system

19   for a reason because it has a number of component parts

20   and a criminal proceeding, of course, begins with law

21   enforcement making a decision to make an arrest.  And

22   before it ever goes to trial, of course, then we have got

23   the intervention of a prosecuting agency who will take a

24   look at everything, make a determination as to whether or

25   not probable cause exists to take this thing further.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1            If, indeed, we are talking about a felony,
 2   then there is yet another layer where there is a
 3   preliminary hearing before a judge and the prosecution
 4   has to put on their evidence and the judge will make a
 5   determination as to whether or not there is sufficient
 6   evidence to believe the crime has been committed and that
 7   this individual committed it.  And if you get past that
 8   stage, then we go to trial in Superior Court.
 9            So it is the entire system.  All right.  What
10   part of the system do you take issue with?
11       THE PROSPECTIVE JUROR:  Actually, I am not too --
12   actually -- it is not a trial yet.
13       THE COURT:  I know.  That is on the 10th.
14       THE PROSPECTIVE JUROR:  It is a pretrial as to he
15   was a minor when the incident happened, and then he was
16   17, and, now, the prosecutor is trying to charge him as
17   an adult because he is 18 now.  So, throughout, we went
18   through over a year of they could not do anything while
19   he was a minor.  So they told him, even threatened him as
20   to we going to charge you as an adult if you don't plead.
21   And he did not believe that he was guilty.  So he says I
22   will go to trial.  And even threatened that they will
23   charge him as an adult.  And he can face --
24       THE COURT:  So in answer to my question as to what
25   part of the system you take issue with, it is the
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    prosecutor agency?

2          THE PROSPECTIVE JUROR:  The district attorney.

3          THE COURT:  That is the prosecuting agency.  All

4    right.  Is that the only part of the system that you

5    think so far treated your son unfairly?

6          THE PROSPECTIVE JUROR:  Correct.

7          THE COURT:  We have prosecutors sitting here.  Not

8    the same prosecuting agency.  All right.  This is the

9    United States Attorney's Office, and the United States

10   Department of Justice.  This is not some --

11         THE PROSPECTIVE JUROR:  I had experience with that

12   too, your Honor.

13         THE COURT:  With the United States Department of

14   Justice?

15         THE PROSPECTIVE JUROR:  In New York, the federal

16   court with my ex-husband.

17         THE COURT:  That's right.  His indictment.

18         THE PROSPECTIVE JUROR:  Right.

19         THE COURT:  That is the grand jury that does that.

20   Citizens like you issue an indictment.

21         THE PROSPECTIVE JUROR:  Right.

22         THE COURT:  Your feelings about, I guess it is the

23   Los Angeles County District Attorney's office, is that

24   going to spill over now and affect the way you view the

25   evidence being presented by the U.S. Attorney's Office in

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    this case?

2         THE PROSPECTIVE JUROR:  I just -- I just think I

3    don't believe that I will be fair to make a decision

4    because of all the anger I have.  I'm sorry.

5         THE COURT:  Okay.  Fair about which?  There is a

6    whole lot of decisions that we are talking about here.  I

7    have only asked you one question with respect to just

8    one issue.  Will you be able to look at the evidence that

9    the government presents in this case fairly and

10   impartially?

11        THE PROSPECTIVE JUROR:  I will still have a

12   feeling that there is something that they are doing

13   wrong.

14        THE COURT:  Even though this is an entirely

15   different agency?

16        THE PROSPECTIVE JUROR:  Correct.

17        THE COURT:  So is your feeling of distrust against

18   all government entirely?

19        THE PROSPECTIVE JUROR:  Yes.  I am being honest,

20   your Honor.

21        THE COURT:  Okay.  No.  That is good.

22        THE PROSPECTIVE JUROR:  Maybe I am a little

23   clouded, but I am just being honest with you.

24        THE COURT:  Okay.  That is fine.  Thank you.

25             I thought there was someone else who had had a

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    negative encounter with law enforcement or the criminal

2    justice system.

3             Yes, ma'am.

4        THE PROSPECTIVE JUROR:  I mean I answered yes to

5    both 8 and 9.

6        THE COURT:  That's right.  An ongoing criminal

7    investigation of some kind?

8        THE PROSPECTIVE JUROR:  Yeah.  It was with my

9    brother.

10       THE COURT:  Hang on.  What was your name, ma'am?

11       THE PROSPECTIVE JUROR:  Teresa Rathsam.

12       THE COURT:  Okay.  And who did this involve?

13       THE PROSPECTIVE JUROR:  My brother.

14       THE COURT:  How old is your brother roughly?  Just

15   roughly?  12?  20?

16       THE PROSPECTIVE JUROR:  49.

17       THE COURT:  All right.  Is this an ongoing

18   situation?

19       THE PROSPECTIVE JUROR:  It has been.

20       THE COURT:  It has been.  All right.  And have

21   your brother's difficulties left you with a sour taste in

22   your mouth regarding any aspect or any component of the

23   criminal justice system?

24       THE PROSPECTIVE JUROR:  Not the criminal justice

25   system but just the criminals.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  We have established Mother Teresa
 2   good, criminals bad.  There was someone else.  Some --
 3   thank you.  There was someone else who answered yes to
 4   Question 9.
 5          MR. WALSH:  I believe it was Juror No. 3, your
 6   Honor.
 7          THE COURT:  You were just going to hide over
 8   there; right?
 9          THE PROSPECTIVE JUROR:  I was raising my hand.
10          THE COURT:  It is like this.  Act like I am giving
11   away the Super Lotto which I am.
12          THE PROSPECTIVE JUROR:  It was a cousin of mine,
13   and I don't have the facts of the case except that there
14   was going to be an investigation, and he actually
15   committed suicide before the case went through.  If it is
16   going to affect my judgment, it will not.
17          THE COURT:  Okay.  That is the bottom line for all
18   of this.  Thank you.
19              Sorry about that.
20              Anybody else?  Tell me this.  It is always
21   difficult to anticipate every conceivable question, but
22   as you are sitting here and thinking about this thing and
23   as you are hearing the questions that I am asking of some
24   people and considering their answers, perhaps something
25   occurs to you that we would never guess in a million
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    years that you think, I bet they would like to know this.

2    Everybody has got one of those.

3            So share.  Go like this, I will call upon you

4    and you can share.  Yes.  Ms. Spence.

5        THE PROSPECTIVE JUROR:  One thing I answered no to

6    8, but when I was a kid, my mom was sent to jail for a

7    few weeks because she couldn't afford to pay some traffic

8    tickets.  And so that really like upset me, and, you

9    know, my mom has kind of always been bitter about that,

10   but I would still be impartial to, you know, somebody

11   else's case that had nothing to do with the same thing.

12       THE COURT:  Thank you, Ms. Spence.  Appreciate

13   that.

14           Anybody else?

15       THE PROSPECTIVE JUROR:  I just thought of

16   something I should -- just thought about.  I forgot all

17   about that.

18       THE COURT:  Mr. Jordan?

19       THE PROSPECTIVE JUROR:  Yes.  As an internal

20   affairs investigator, I was investigated by the Attorney

21   General's office for allegedly coercing an individual to

22   resign from their job.  I wasn't found guilty of any

23   wrongdoing.

24       THE COURT:  You were investigated by a federal

25   agency?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE PROSPECTIVE JUROR:  By the Attorney General's

 2    office out of Sacramento.

 3              THE COURT:  Out of Sacramento.  Okay.

 4              THE PROSPECTIVE JUROR:  So they did an

 5    investigation on me on the investigation that I did on

 6    someone.

 7              THE COURT:  Okay.

 8              THE PROSPECTIVE JUROR:  But I wasn't found guilty

 9    of any wrongdoing.

10              THE COURT:  But do you think you were treated

11    fairly, though, during the course of that investigation?

12              THE PROSPECTIVE JUROR:  Yeah.  I was treated

13    fairly.

14              THE COURT:  So it didn't leave some bad taste in

15    your mouth about criminal investigations in general, did

16    it?

17              THE PROSPECTIVE JUROR:  No.  No.

18              THE COURT:  All right.

19              Another question I have for all of you, I

20    think we all value our privacy.  I think we all recognize

21    that to a certain extent in order to live in a somewhat

22    safe society, we are each going to have to relinquish

23    some elements of our privacy.  You may hear evidence in

24    this case of wiretap intercepts.

25              I want to know whether or not this drives any
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    of you so completely up the wall that that is it, you are

2    just going to go blind and not be able to listen to the

3    rest of this case.

4           I see no hands.  Excellent.  All right.  At

5    this point, ladies and gentlemen, I am going to turn it

6    over to the lawyers to ask -- oh.  Wait a minute.

7        (The following proceedings were held at sidebar

8         outside the presence of the prospective jurors:)

9        THE COURT:  Okay.  We are not even going to have

10   to argue about No. 13.  Okay.  She is gone.

11          The question is whether or not there is any

12   challenges for cause.

13       MR. DORE:  The government's exclusive challenge --

14   this is Michael Dore -- for cause was No. 13,

15   Ms. Kochkerian.

16       THE COURT:  Okay.  That is easy.  Anybody other

17   than her?

18       MR. CEPHAS:  I don't agree with 13 for cause.

19       THE COURT:  Really?

20       MR. CEPHAS:  No, I don't.

21       THE COURT:  Okay.

22       MR. CEPHAS:  That is the only issue I have.

23       MR. DORE:  Your Honor, may I just put on the

24   record my basis.  Among other things, Ms. Kochkerian said

25   that she did not believe she would be fair because of her

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    anger, and we believe that that and her other statements

2    as well as her demeanor in responding to your questions

3    on these issues provides sufficient cause for her to be

4    excused.

5         MR. CEPHAS:  And, your Honor, I think that she has

6    not said enough yet.  She seems to be a little bit

7    confused.  I think it might be appropriate for the

8    government to use some of their voir dire with respect to

9    her to see if they can establish cause.

10        THE COURT:  She said she couldn't be fair.

11        MR. CEPHAS:  And I think maybe that should be

12   explored because it seems to me that, I believe what she

13   is really expressing is she does think there is sometimes

14   something wrong with the system.  But I am not convinced

15   that if the government explored it further, she

16   absolutely could not be fair with respect to our clients.

17   I think she would be critical of the government's

18   witnesses as she should be, but I am not convinced that

19   she wouldn't be fair.

20        THE COURT:  Okay.  All right.  And there is no

21   one else?  Okay.  All right.  Let me talk to her a little

22   bit then.  Thank you.

23        (The following proceedings were held in the

24         presence of the prospective jurors:)

25        THE COURT:  First of all, during the course of the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   trial, we are not going to do very much of that at all,

2   these sidebars.  I know jurors think that we are trying

3   to keep stuff from them, and, quite frankly, that is

4   indeed what we are doing.  But it is necessary.

5          And during this phase of the trial, it is

6   absolutely necessary because we have to say things behind

7   your back.

8          Okay.  You just knew, didn't you.

9      THE PROSPECTIVE JUROR:  I just need to be honest,

10  your Honor.

11     THE COURT:  I want you to be.

12     THE PROSPECTIVE JUROR:  I don't think it will be

13  fair for me to make a decision with the feelings I have.

14     THE COURT:  All right.

15     THE PROSPECTIVE JUROR:  And it is not fair to the

16  prosecutors.  It is not fair to the, you know, people who

17  are being accused.

18     THE COURT:  It wouldn't be fair to anyone to have

19  you on this jury?

20     THE PROSPECTIVE JUROR:  Correct.

21     THE COURT:  Because you are not a fair and

22  impartial, open-minded conscientious citizen?

23     THE PROSPECTIVE JUROR:  Because of the pain I went

24  through with my ex-husband when I was married with

25  three young kids, and I think the divorce is because of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    that big time.  It affected me a lot.  And now my son is

2    going through that, and it just, I don't think the system

3    is working right.

4            THE COURT:  Okay.

5            THE PROSPECTIVE JUROR:  Planting evidence, you

6    know.

7            THE COURT:  Say what?

8            THE PROSPECTIVE JUROR:  Planting evidence, you

9    know.

10           THE COURT:  Oh, my goodness.

11           THE PROSPECTIVE JUROR:  And then, thank God, he

12   was found not guilty, but it was, affected me a lot, your

13   Honor.

14           THE COURT:  Do you think that in this particular

15   case that you would presuppose that evidence had been

16   planted?

17           THE PROSPECTIVE JUROR:  I'm sorry.  I couldn't --

18           THE COURT:  In this case.  This case.

19           THE PROSPECTIVE JUROR:  I don't know the case.

20           THE COURT:  Would you go into this case

21   presupposing that the authorities had planted evidence?

22           THE PROSPECTIVE JUROR:  I still think yes.

23           THE COURT:  You would.  This case?

24           THE PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Knowing nothing about this case, you

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  would simply assume that evidence had been planted.

2        THE PROSPECTIVE JUROR:  It is -- I am so angered

3  and upset.

4        THE COURT:  Okay.  All right.  So there is simply

5  no way you could sit with an open mind and listen to the

6  evidence?

7        THE PROSPECTIVE JUROR:  I don't think it will be

8  fair for me because of all the pain.  I still have the

9  pain in me, your Honor.

10        THE COURT:  Well, I sympathize with you.  The

11  fairness that I am looking for is for these

12  three individuals over here.  I want someone who can be

13  fair to them as well as to the government and listen to

14  the evidence with an open mind, critically thinking,

15  critically assessing credibility of witnesses, et cetera,

16  bringing some intellect and common sense to play and make

17  a decision as to whether or not certain facts have been

18  established.

19        That is all I am looking for.  Just 12

20  citizens who can do that.  All right.  So you are not

21  one of those citizens, that is that what you are saying?

22        THE PROSPECTIVE JUROR:  No, your Honor.

23        THE COURT:  Okay.  Good enough.  Thank you.  I

24  appreciate that.

25        Your position now, Mr. Cephas?  Unchanged?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          MR. CEPHAS:  Unchanged, your Honor.

2          THE COURT:  All right.  That is regrettable.  You

3    can return, ma'am, to the third floor.  You are excused.

4          THE PROSPECTIVE JUROR:  Thank you.

5          THE COURT:  All right.

6          THE CLERK:  Susan Davis Mitchell.

7               If I could have you come around, sit at the

8    end right here.  And if I could have Mr. Guerrero, if I

9    could have you sit on the end of the first row.

10         THE COURT:  Ms. Mitchell, do you happen to --

11   well, you will in a moment.

12         THE PROSPECTIVE JUROR:  My name is Susan Davis

13   Mitchell.  I live in Santa Barbara.  I am retired.  I am

14   married.  I have three stepchildren and two children.

15   The oldest is a nurse.  The next is a San Francisco

16   police sergeant.  The next works in the hotel business.

17   The next is a manager at a dog day care.  And the

18   youngest works part-time in security.

19              I have never served on a jury before.  My

20   stepdaughter is in law enforcement.  My husband is an

21   attorney, and no to the last two questions.

22         THE COURT:  Okay.  Thank you.  You are retired

23   from what?

24         THE PROSPECTIVE JUROR:  I was a travel agent.

25         THE COURT:  Any connection ever with Oxnard.  I'm

1    sorry.  Oxnard.  Ontario?

2         THE PROSPECTIVE JUROR:  No.

3         THE COURT:  None at all?

4         THE PROSPECTIVE JUROR:  None.

5         THE COURT:  Now, all this discussion regarding

6    gangs, has that evoked any emotional response in you

7    based upon any experiences that you or a family member or

8    a close friend has had?

9         THE PROSPECTIVE JUROR:  No.

10        THE COURT:  Okay.  With respect to our discussions

11   regarding law enforcement and whether or not that will

12   evoke any feelings in you either pro or con so that it

13   would affect your attitude towards their testimony?

14   Nothing?

15        THE PROSPECTIVE JUROR:  No problem.

16        THE COURT:  Okay.

17        THE COURT:  What about this issue of privacy?  Do

18   you feel so strongly about your personal privacy that you

19   find it offensive that from time to time the government

20   may find it necessary to use the wiretaps, phone

21   intercepts as one element of their investigation tool

22   box?

23        THE PROSPECTIVE JUROR:  I have no problem with

24   that.

25        THE COURT:  Okay.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1            THE COURT:  All right.

2            MR. CEPHAS:  Your Honor?

3            THE COURT:  Yes, Mr. Cephas.

4            MR. CEPHAS:  I apologize, but earlier, and I

5   believe it was Mr. Diep indicated that he lived in San

6   Diego, and I wasn't sure if it is -- maybe I misheard,

7   but I am not sure it is appropriate for someone outside

8   of the Central District to be on the jury, but perhaps I

9   misheard.

10            THE PROSPECTIVE JUROR:  San Gabriel.

11            MR. CEPHAS:  I'm sorry.  Then I did mishear.

12            THE COURT:  Okay.

13            MR. CEPHAS:  I apologize.

14            THE COURT:  All right.  At this time, ladies and

15  gentlemen, I am going to turn it over to the lawyers --

16  well, wait a minute.

17            Is there any challenge for cause as to

18  Ms. Mitchell?

19            MS. EL-AMAMY:  No, your Honor.

20            MR. NAVARRO:  No, your Honor.

21            MR. WALSH:  No, your Honor.

22            MR. CEPHAS:  No, your Honor.

23            THE COURT:  All right.  At this point, I am going

24  to turn it over for a brief voir dire for purpose of

25  exercising peremptory challenges to the attorneys.  Five
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1   minutes, counsel, beginning with the government.

 2        MS. EL-AMAMY:  Thank you.

 3        Good morning.  Again, my name is Reema

 4   El-Amamy.  Along with my colleague, I represent the

 5   government.  And I am going to just ask a few follow-up

 6   questions based on what the judge has already said.

 7        Now, we have heard some questions about

 8   viewing law enforcement testimony differently.  Is there

 9   anybody that would view that testimony more favorably or

10   less favorably?  Anyone, based on your experience or

11   employment, would you tend to discredit or credit more

12   law enforcement?  Yes, sir?

13        THE PROSPECTIVE JUROR:  I think I would credit

14   more law enforcement because of my training.  I work with

15   the inspector general's office, and we deal with -- I was

16   a senior -- I was a supervising auditor, and our training

17   deals with it because we look at fraud cases in the

18   district.

19        MS. EL-AMAMY:  Would that experience make you

20   biased in this case towards either side?

21        THE PROSPECTIVE JUROR:  I wouldn't say I would be

22   biased, but that thing there that is at the back of my

23   mind, but it might subconsciously.

24        MS. EL-AMAMY:  Do you think you could follow the

25   court's instructions and look at the evidence and not

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    judge any guilt or innocence until you were instructed

2    to?

3            THE PROSPECTIVE JUROR:  Yes.  I can do that.

4            MS. EL-AMAMY:  Is there anything else that we

5    should be aware of?

6            THE PROSPECTIVE JUROR:  Well, due to the training,

7    it might stick at the back of my mind.  I might -- it

8    might be a subconscious thought or subconscious leaning

9    to the lawsuit side.  But, willfully, I would really try

10   my best or not try, but I would like to be fair.

11           MS. EL-AMAMY:  Thank you, sir.

12               Is there anybody else that feels that they

13   would credit or discredit any sort of law enforcement

14   testimony?  For example, sir, would your experience in

15   internal affairs cause you any issues in this case?

16           THE PROSPECTIVE JUROR:  I don't think so.  I mean,

17   because I have done investigations on both sides of the

18   spectrum.  I did, prior to doing internal affairs

19   investigations, I did criminal investigations, and so I

20   have investigated both sides.  There has been cases with

21   internal affairs investigations where it was determined

22   that the law enforcement staff were wrong, and then they

23   have been right.  You know, I think I would pride myself

24   on the fact that I deal with the evidence that is placed

25   before me.  And so you are guilty if you are guilty, if

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   you are not, you are not.  And if the evidence supports
 2   it, that is what it is.
 3        MS. EL-AMAMY:  Thank you, sir.
 4            Is there anyone who has had an experience with
 5   law enforcement where you feel they treated you
 6   unprofessionally, unfairly?  Yes, sir.
 7        THE PROSPECTIVE JUROR:  When I was in high school,
 8   I had really long hair, and I smoked cigarettes.  So I
 9   had a really beat up truck that I drove.  And I got
10   pulled over three different times for nothing besides the
11   fact of what I looked like.  And two times they put the
12   plastic handcuffs on me and put me in the car.  I don't
13   hold it against all law enforcement, but I definitely
14   think I would be a little leary on how they get evidence
15   because when I got pulled over one time, the cop, the
16   first thing she asked me was are you smoking marijuana?
17   Do you have methamphetamine in the car?  Do you have
18   heroin in the car?  Do you have cocaine in the car?  Sir,
19   step out of the car.  So it was one of those situations.
20   I have dealt with that a few times.
21        MS. EL-AMAMY:  Well, now, you work for government,
22   has your view changed over time?
23        THE PROSPECTIVE JUROR:  Not necessarily because I
24   still actually still drive that truck.  So, you know, I
25   have seen the difference like even just like when I wear
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1    my suit like I have gotten pulled over once on my way to

 2    work.  And there was no different circumstance.  The

 3    difference was the registration was up, and the cop just

 4    like checked my ID and said, okay, you need to get new

 5    registration, along you go.

 6           MS. EL-AMAMY:  Do you think you can be impartial

 7    in this case?

 8           THE PROSPECTIVE JUROR:  I think it would depend on

 9    like what -- the one thing I would get holed up on is if

10    there is an instant where they had, you know, the

11    defendants were saying one thing about a procedure a cop

12    did to get, either to search a vehicle or to obtain some

13    kind of evidence, I still might be leary of that.  Like I

14    said, I don't hold it against all government or law

15    enforcement, but I am definitely like I do know that

16    there is tricks that cops use to obtain evidence.

17           MS. EL-AMAMY:  Is there anyone else?

18              Is there anyone who has been a victim of a

19    crime or had a family member or friend been a victim of a

20    crime that would cause you to have some problems in this

21    case?

22              Is there anyone that has been the subject of a

23    wiretap investigation or known someone to be the subject

24    of a wiretap investigation?

25              Is there anything about the procedures used

1    during wiretaps that would cause you to have problems in

2    this case?

3              Has any member of your family or a friend ever

4    filed a lawsuit or complaint against a law enforcement

5    officer?

6         MS. EL-AMAMY:  Yes, sir.

7         THE PROSPECTIVE JUROR:  It may solve some other

8    stuff too.  My best friend was -- well, he was involved

9    in some spousal abuse, but then his wife worked for the

10   sheriff's department.  So they came while on the clock

11   and just beat him up pretty badly.  But I have also

12   gotten several friends that are cops too.  So there is

13   good and bad obviously.  They did falsify their timecards

14   and so she was involved.  She was terminated at some

15   point because she was testifying against them, and she

16   ended up winning the lawsuit and a substantial sum of

17   money.  But, you know, that is not disclosed how much.

18        MS. EL-AMAMY:  Do you think you can be impartial

19   in this case?

20        THE PROSPECTIVE JUROR:  Yeah.  This was several

21   years ago, and like I said there is both sides of the

22   coin there, with, you know, there was obviously, you

23   know, dishonest people in every profession.

24        MS. EL-AMAMY:  Which law enforcement agency was

25   this?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1            THE PROSPECTIVE JUROR:  This was the L.A. County

 2   Sheriff.

 3            MS. EL-AMAMY:  Now, if you heard evidence that

 4   officers used surveillance or were secretly watching in

 5   connection with a criminal investigation any individual,

 6   would anyone have a problem with that kind of testimony?

 7            THE PROSPECTIVE JUROR:  I don't know if I have a

 8   problem but I know that I am in a PHD program so I am

 9   sort of privvy to psychologists who I have read a lot of

10   papers about eye witness testimony and how accurate it

11   can be or not be, and often times those professors are

12   called into trials.

13            MS. EL-AMAMY:  If this wasn't an eye witness case,

14   if this was just surveillance being conducted in

15   connection with an investigation, would you be okay with

16   that kind of testimony?

17            THE PROSPECTIVE JUROR:  Yeah.

18            MS. EL-AMAMY:  Would anyone else have a problem

19   with that?

20            Your Honor, I have no more questions.

21            THE COURT:  Okay.

22            MR. WALSH:  Your Honor, could we go out of order?

23   I was going to go first.

24            THE COURT:  There is no order.

25            MR. WALSH:  Thank you.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Ladies and gentlemen, this is a criminal case,

2    and at the end of the case you will be instructed on the

3    principles of a person cannot be found guilty unless they

4    are convinced beyond a reasonable doubt.

5    Does anybody have any quarrel with that

6    particular legal definition or legal requirement that

7    they couldn't serve on a criminal jury?

8    And, similarly, there is a legal principle

9    that a defendant in a criminal case is not required to

10   testify and that if he or she does not testify, that is

11   not evidence of their guilt.  Now, so it requires you to

12   change your thinking at least in terms of that type of

13   evidence.  And you will be instructed of that legal

14   principle at the end of the case.

15   Is there anybody that couldn't follow such a

16   jury instruction?

17   THE PROSPECTIVE JUROR:  I would want to hear from

18   them.  I would want to look them in the eye and hear from

19   them.  I would want to hear from the defendants.  I would

20   like to look them in the eye and hear what they had to

21   say.

22   THE COURT:  Let me butt in.

23   MR. WALSH:  Very well, your Honor.

24   THE COURT:  In the United States of America, you,

25   sir, are accused of committing some sort of a crime,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    let's say falsely, and put on trial, the burden is on the

2    prosecution to establish your guilt beyond a reasonable

3    doubt.  The burden is not on you to do anything but show

4    up.  Clear?

5        THE PROSPECTIVE JUROR:  Yes.

6        THE COURT:  Are you happy with that?

7        THE PROSPECTIVE JUROR:  I think in the back of my

8    mind if I didn't hear them testify, I would always have

9    some doubt.

10       THE COURT:  We are talking about about you.

11   Everything is different when it is us.

12       THE PROSPECTIVE JUROR:  I understand.

13       THE COURT:  You as a defendant.  Do you feel that

14   you should have some burden?  You have been accused, you

15   have been hauled into court, you have been put on trial

16   by the government.  Do you think you have some burden to

17   disprove their case?

18       THE PROSPECTIVE JUROR:  I think if I was innocent,

19   I would want to tell everybody that I was innocent.  I

20   would want to explain.

21       THE COURT:  That is not my question.  I want you

22   to think back to junior high school civics.

23       THE PROSPECTIVE JUROR:  I understand the

24   principle.

25       THE COURT:  Okay.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE PROSPECTIVE JUROR:  But I would defend myself.
 2          THE COURT:  Are you happy with the principle?
 3          THE PROSPECTIVE JUROR:  I am happy with the
 4     principle.
 5          THE COURT:  Would you like to live some place else
 6     where you don't have that principle, where if you are
 7     accused, you must prove your innocence?
 8          THE PROSPECTIVE JUROR:  No.
 9          THE COURT:  Is it okay if there are those of us
10     who really like that principle and would like to live
11     under that principle and take advantage of its
12     protections?  Is that okay?
13          THE PROSPECTIVE JUROR:  That is okay.
14          THE COURT:  Would you hold it against me, for
15     example, who has been falsely accused and put on trial
16     for some crime that I decide I will show up because I am
17     obligated to show up, but that is it.  Prove your case
18     against me government, if you can.  Would you hold it
19     against me if I take that position and rely on my
20     constitutional right to do so?
21          THE PROSPECTIVE JUROR:  I don't think I would hold
22     it against you but I think my judgment of you would be
23     colored by your -- by not coming forward and defending
24     yourself.
25          THE COURT:  You would like to rewrite our
```

```
 1  constitution, wouldn't you?

 2          THE PROSPECTIVE JUROR:  No, I wouldn't.

 3          THE COURT:  We are not at Starbucks, and we are

 4  not just having some esoteric, academic conversation

 5  here.  This is a federal courthouse.  All right.  We are

 6  talking about federal offenses, the United States

 7  constitution applies in this room.

 8          THE PROSPECTIVE JUROR:  I understand.

 9          THE COURT:  All right.  You understand that?

10          THE PROSPECTIVE JUROR:  I understand.

11          THE COURT:  You do not have to take the stand and

12  utter a word as a criminal defendant.  You understand

13  that?

14          THE PROSPECTIVE JUROR:  I understand this

15  principle.

16          THE COURT:  Can you live with it?

17          THE PROSPECTIVE JUROR:  I am talking about how my

18  judgment may be colored.

19          THE COURT:  Okay.  We are going to find you

20  another country, something you would be more happy with.

21  All right.

22          Sir, you are saying that if a criminal

23  defendant doesn't take the stand, that you are going to

24  reach the assumption that that defendant is probably or

25  more likely than not guilty.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1          THE PROSPECTIVE JUROR:  I think if all other
2   evidence was gray, I would tend that way.  If it is black
3   and white, then I would go whichever the black and white
4   was.  But if it was --
5          THE COURT:  Gray?
6          THE PROSPECTIVE JUROR:  If it was a gray area, I
7   would probably hold that against them.
8          THE COURT:  Let me throw something else in here
9   because I think it is important to all of you.  If the
10  evidence is gray, they haven't done their job.  All
11  right.  They have to prove the defendant's guilt beyond a
12  reasonable doubt.  Not gray.  Not 50 shades of gray.
13  Beyond a reasonable doubt.  Clear?
14         THE PROSPECTIVE JUROR:  Yes.
15         THE COURT:  So we never get to this thing about
16  well, okay, we have to go to the tie breaker and the tie
17  breaker is whether or not the defendant testified.  We
18  never get there then under your scenario; right?
19         THE PROSPECTIVE JUROR:  Okay.
20         THE COURT:  We should never never get there
21  anyway, should we?  Okay.  Remember, after this is over
22  and we are down at Starbucks, okay, we are entitled to
23  those kinds of beliefs.  In this room, in this scenario,
24  we are entitled to the protections of the United States
25  Constitution which we all profess to love.  Okay.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  All right.  Not sometimes.  Okay.  We

3    have to be willing to apply the protections of our

4    constitution.  Can you do that?  I am going to instruct

5    you to do that.  Can you follow those instructions?

6              THE PROSPECTIVE JUROR:  I think so.

7              THE COURT:  Think so?

8              THE PROSPECTIVE JUROR:  I think all issues in life

9    are gray.

10             THE COURT:  No, no, no, no.  Listen, I am not in

11   charge of anything at home.  Here, I am going to instruct

12   you on the law.  Part of that law is a criminal defendant

13   need not testify, absolutely doesn't have to testify and

14   you can't hold that against them.  You are not to make

15   any assumptions regarding that.  I am going to instruct

16   you on that.

17              And as with all the other instructions I am

18   going to give you, I expect compliance, never from my

19   wife, but from you all, I expect compliance.  Okay?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Question, could you do that?  Can you

22   follow the law as I give it to you?

23             THE PROSPECTIVE JUROR:  I think I can, and I

24   understand if there is any doubt in any mind at all, if

25   it is all gray, then I will say --
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  Not guilty.

2          THE PROSPECTIVE JUROR:  -- not guilty.

3          THE COURT:  That's right.

4          THE PROSPECTIVE JUROR:  And I am going into this

5     because of my beliefs of how the world works that that is

6     going to be gray.

7          THE COURT:  I was totally lost there.  Mr. Walsh,

8     turn it over to you, sir.

9          MR. WALSH:  During the voir dire, one of the

10    jurors back here indicated that they had a personal

11    experience in their private life that might have affected

12    their ability to be fair and impartial in a prosecution

13    of someone for violating the drug laws, and I believe it

14    was Mr. Guerrero.  I don't have any further questions for

15    Mr. Guerrero, but he informed us that his sister had a

16    drug problem, and that that was a very emotional thing

17    that may have affected him and may interfere with his

18    ability to be fair and impartial.

19             So my question is are there any other jurors

20    in the jury panel that have had an experience in their

21    past life where whether it be a family member or a

22    personal friend that had a drug problem and that that may

23    possibly affect their ability to be fair and impartial if

24    they are sitting on a jury where someone is charged with

25    a drug offense.  Is there anyone in the panel up here?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   Anyone?  I think we have already heard from Mr. Guerrero.
 2   So is there anyone else?
 3            Yes.  You have already answered the question.
 4            Yes.  Let me see.  You are Ms. Williams?
 5       THE PROSPECTIVE JUROR:  Austin, Nicole.
 6       MR. WALSH:  Just a moment.  Okay.  Go ahead.
 7       THE PROSPECTIVE JUROR:  My niece was on meth for a
 8   long time up until she was like 21.  I don't like drug
 9   dealers.  They messed up my family for a long time.  I
10   don't think that it will cloud my judgment, but I am not
11   too sure because it really tore us apart.  I was the
12   one who took care of her when she was sick, going through
13   her withdrawals.  So it is really difficult for me to
14   have to deal with that.  It is hard talking about it now,
15   but she is okay now.  But I don't know if I will be
16   impartial or partial.  I don't know.  Not too sure.
17       MR. WALSH:  And is there anyone else that had a
18   similar experience?
19       THE PROSPECTIVE JUROR:  Teresa Rathsam.  So my
20   brother was in prison for dealing and use, and my sister,
21   I am currently helping raise her 5-year-old twin boys
22   based on her drug usage.
23       MR. WALSH:  All right.  And she is still going
24   through a drug problem currently?
25       THE PROSPECTIVE JUROR:  Yes.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    MR. WALSH:  So this isn't something that happened

2    in the past.  You think that might have some strong

3    influence on your ability to be fair and impartial if you

4    sat on a criminal case where someone was charged with

5    drugs?

6         THE PROSPECTIVE JUROR:  Yes.  I mean, I don't

7    think -- I think drug dealers are in it for their own

8    purpose, their own money, their own gain and their own

9    addiction.

10        MR. WALSH:  Okay.  Now, there is a principal in

11   criminal law that a defendant at the start of any

12   criminal trial has a right to be presumed innocent.  In

13   other words, we don't know whether the three defendants

14   here charged are drug dealers or not.  In fact, that is

15   what the trial is about.  So at the start of the trial,

16   would you be able to follow that instruction that you are

17   to presume the three defendants here innocent until they

18   have -- the government has presented evidence beyond a

19   reasonable doubt that they are drug dealers?

20        THE PROSPECTIVE JUROR:  I would hate to be, but I

21   would do my best.  But when I heard the judge first say

22   what the counts were and the charges against them and the

23   layers of it, that doesn't make me feel very good about

24   it.  I mean, I have to be honest with you.

25        MR. WALSH:  Thank you.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              And then I had some specific questions for
 2    some of the jurors on the panel.  Juror No. 11,
 3    Mr. Rodriguez, I think in answer to the court's question
 4    your occupation, you told us you were unemployed but you
 5    didn't tell us what you were unemployed from?
 6              THE PROSPECTIVE JUROR:  A mover.
 7              MR. WALSH:  Mover.  Oh.  Okay.
 8              MR. WALSH:  And could you pass the microphone to
 9    Ms. Benevente, I think the same question.  I think you
10    had mentioned you were unemployed.
11              THE PROSPECTIVE JUROR:  It is my spouse.
12              MR. WALSH:  What was his former occupation?
13              THE PROSPECTIVE JUROR:  Construction.
14              MR. WALSH:  And then could you pass the microphone
15    to Ms. Slingerland.  Could you give me a brief
16    description of the type of work that you do?  I guess you
17    are with a computer training company?
18              THE PROSPECTIVE JUROR:  Yes.  I am in the
19    corporate office.
20              THE COURT:  Mr. Walsh, hang on.
21              MR. WALSH:  I'm sorry.  Speed this up.
22              THE PROSPECTIVE JUROR:  I coached franchises on
23    how to use our internal system, all technical.
24              MR. WALSH:  And I will try to be more --
25              THE COURT:  Relevant.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. WALSH:  I will try to limit the questions,

 2   your Honor.

 3              I have a question for Ms. Wang, Juror No. 4.

 4   You work for the Los Angeles Superior Court.

 5              Could you tell me what you do there?

 6         THE PROSPECTIVE JUROR:  Clerk.

 7         MR. WALSH:  Are you in a courtroom?

 8         THE PROSPECTIVE JUROR:  Not in a courtroom.  In

 9   the clerk's office.

10         MR. WALSH:  And have you served in the courtroom

11   as a court clerk?

12         THE PROSPECTIVE JUROR:  No.

13         MR. WALSH:  And, Ms. Wolfe, could you hand -- I

14   believe you told me that your husband works in a prison?

15         THE PROSPECTIVE JUROR:  CMC.  He is a yolk fellow

16   so he has a volunteer chaplain that he is there once a

17   week.

18         MR. WALSH:  So he is a minister, then?

19         THE PROSPECTIVE JUROR:  Yeah.

20         MR. WALSH:  And Janice Spence, in answer to the

21   question as to whether or not you hadbody any in law

22   enforcement, you told us your parents were in the

23   military.  Were they in law enforcement related options

24   in the military?

25         THE PROSPECTIVE JUROR:  I don't know.  My mom did
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  weapons, and I am not sure exactly or weapons supply.  I

2  am not sure exactly what my dad did, but I have an uncle

3  who, I don't know, like all my family is in the military.

4  So it is all different kinds of military, everything from

5  Navy Seal to Marines, Army.

6      MR. WALSH:  Nothing specifically related to law

7  enforcement, like military police or anything like that?

8      THE PROSPECTIVE JUROR:  Not that I am aware of.

9      MR. WALSH:  Okay.  And then, Mr. Alvarez, when you

10  told us you worked for Los Angeles County, what type of

11  duties do you have on your job?

12      THE PROSPECTIVE JUROR:  Eligibility worker.  I

13  determine eligibility for participants in the welfare

14  department.

15      MR. WALSH:  Okay.  And do you work with law

16  enforcement.  Do they do investigations of persons that

17  are improperly receiving welfare?

18      THE PROSPECTIVE JUROR:  They do yes, but I don't

19  do that.

20      MR. WALSH:  You don't get involved in those

21  investigations?

22      THE PROSPECTIVE JUROR:  No.

23      MR. WALSH:  Yes.  Ms. Spence.  Yes.

24      THE PROSPECTIVE JUROR:  I know it says friends and

25  family members.  So, yes, I have a friend from high

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   school who is a military police officer.

 2         MR. WALSH:  Okay.  Thank you.

 3         MR. WALSH:  That is all I have, your Honor.  Thank

 4   you.

 5         MR. CEPHAS:  Excuse me, but my legs are stiff.

 6               Myself, Mr. Walsh and Mr. Navarro are all

 7   court-appointed attorneys.  Do any of you have any

 8   problems with the court and essentially you the taxpayer

 9   paying for attorneys for defendants who cannot afford an

10   attorney?

11               Mr. Willis, you indicated some problems with

12   people who don't take the stand on their own behalf.  Do

13   you have any feelings as to why you think people,

14   defendants may not take the stand in their own defense?

15         THE PROSPECTIVE JUROR:  I don't know why they

16   would not.

17         MR. CEPHAS:  Why do you think they wouldn't?

18         THE PROSPECTIVE JUROR:  Because they don't want to

19   be asked questions that would be to their detriment.

20   They may want to hide things.

21         MR. CEPHAS:  Wouldn't it be easier for them to

22   just get on the stand and say I didn't do it, I wasn't

23   there?

24         THE PROSPECTIVE JUROR:  Perhaps.

25         MR. CEPHAS:  What if you -- and just, for example,
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    what if you were convicted of a crime 10 years ago, and a

2    crime is committed in your neighborhood, the police round

3    up the usual suspects, you have a record, they pick you

4    up, would you be reluctant to get on the stand knowing

5    that unless you get on the stand, that prior conviction

6    doesn't come into evidence?

7         MR. CEPHAS:  I think I would probably be

8    reluctant, but, as a juror, I would want to know about

9    the prior conviction, I think.

10        MR. CEPHAS:  But if you were the defendant,

11   wouldn't you be afraid that the jury might think you did

12   it once, you must have done it again?

13        THE PROSPECTIVE JUROR:  As a defendant, I would be

14   afraid of that.  Yes.  Someone sitting in judgment of

15   that person, I would want to know about it.

16        MR. CEPHAS:  Okay.  Okay.  Ms. Wolfe.

17        THE PROSPECTIVE JUROR:  Lot of information going

18   by, and I am a sloppy writer, but I believe you said at

19   some point that your daughter was attracted to gangs?

20        THE PROSPECTIVE JUROR:  I mean, well, we have had

21   some issues with marijuana and escaping from the house

22   those things and typical.

23        MR. CEPHAS:  Do you think your daughter knows some

24   gang members?

25        THE PROSPECTIVE JUROR:  You know, there are -- we

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   live in SLO.  As far as I know, there are not gangs.
 2          MR. CEPHAS:  But do you think your daughter knows
 3   any gang members?
 4          THE PROSPECTIVE JUROR:  I do not.
 5          MR. CEPHAS:  Do you think it is possible for a
 6   person to know a gang member and to even be friends with
 7   a gang member but not be a part of the gang?
 8          THE PROSPECTIVE JUROR:  I do.
 9          MR. CEPHAS:  Okay.  What about you, Mr. Jordan, do
10   you believe that a person can be friends with a gang
11   member without being part of the gang.
12          THE PROSPECTIVE JUROR:  Yes.  Sure.  Yes, I do.
13          MR. CEPHAS:  And you have some prison experience;
14   is that correct?
15          THE PROSPECTIVE JUROR:  Yes, I do.  Yes.
16          MR. CEPHAS:  And, in your experience, are there
17   people in prison who are friends with gang members in
18   prison but don't themselves become part of the prison
19   gang?
20          THE PROSPECTIVE JUROR:  That's correct.
21          MR. CEPHAS:  And have you seen instances where
22   people in prison may even align themselves with gangs in
23   prison say, for protection, but don't become part of the
24   gang?
25          THE PROSPECTIVE JUROR:  Yes.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          MR. CEPHAS:  Why is that?  Why would someone do

2     that?

3          THE PROSPECTIVE JUROR:  It is a territorial thing.

4     And it is more on the lines of race lines.  So within the

5     prison system, Hispanics run with Hispanics, black runs

6     with blacks, and whites associate with whites.  And so

7     from a protection, a safety standpoint, you have to align

8     yourself with one of those three groups.  It would be in

9     your best interests to do that instead of walking the

10    yard alone, but you may not necessarily be a gang member.

11    The term they use would be a gang associate.

12         MR. CEPHAS:  So if I got thrown in prison, I would

13    probably align myself with other black inmates even part

14    of a gang even though I didn't join the gang?

15         THE PROSPECTIVE JUROR:  Yes.  That's correct.

16         MR. CEPHAS:  Ms. Spence, I think you had indicated

17    you were a victim of graffiti.

18              I know there are different kinds of graffiti

19    that we see in our everyday lives.  There is the, like,

20    scratch, I don't know, messages or something, and then

21    there is stuff that some people call street art.  Are you

22    familiar with street art type graffiti?

23         THE PROSPECTIVE JUROR:  Yeah.  The only reason why

24    I said it was gang-related graffiti is because the people

25    who I talked with on the phone said that it was gang

```
 1   related graffiti.  So whether they are educated on that
 2   or not, I don't really know.
 3        MR. CEPHAS:  Was it the kind of graffiti that is
 4   done with spray cans in an art format, or was it more
 5   just like words?
 6        THE PROSPECTIVE JUROR:  It was more like words,
 7   but you couldn't read it that well.  I didn't know what
 8   it said.  Like a foreign language or something or like
 9   really decorative writing.
10        MR. CEPHAS:  What about you, Mr. Willis, I believe
11   you also indicated you were a victim of graffiti on a
12   number of occasions?
13        THE PROSPECTIVE JUROR:  Yes.  Several times.  It
14   continues.
15        MR. CEPHAS:  Is some of it artwork?
16        THE PROSPECTIVE JUROR:  No.  It was just all
17   tagging.  I am familiar with the graffiti art and the
18   difference.
19        MR. CEPHAS:  So you have seen street art and
20   graffiti art?
21        THE PROSPECTIVE JUROR:  I have gone -- my wife is
22   an artist, and I know the difference.
23        MR. CEPHAS:  Do you believe that someone who
24   engages in street art is necessarily a criminal other
25   than the fact that it is probably a crime to deface
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   someone else's property?

 2        THE PROSPECTIVE JUROR:  Gee whiz.  I believe in

 3   the arts.  So if it is good art, it is less criminal than

 4   bad art.

 5        MR. CEPHAS:  If you found out that one of the

 6   defendants was a street artist, and, you know, spray

 7   painted artwork in his community, would you hold it

 8   against him and maybe be more likely to find him guilty?

 9        THE PROSPECTIVE JUROR:  I might be especially if I

10   didn't like the art.

11        MR. CEPHAS:  Okay.  Fair enough.  Mr. Walsh had

12   made some comments about proof beyond a reasonable doubt,

13   and I think many jurors wrestle with the notion of proof

14   beyond a reasonable doubt versus their opinion.

15             I think all of you come in to this room with

16   opinions.  Some of you have opinions that there is life

17   on other planets.  Some of you have opinions that there

18   is not.  In fact, anyone who thinks there might be life

19   on other plants can you raise your hand?

20             I am not sure of your name.

21        THE PROSPECTIVE JUROR:  Brendan Langley.

22        MR. CEPHAS:  You have an opinion that there is

23   life on other planets?  If this trial was about the

24   government proving there was life on other planets but

25   they didn't prove it beyond a reasonable doubt, but you
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   already have your own opinion, at the end of the case,

2   how would you vote when the judge asked you do you find

3   that they have proven that fact beyond a reasonable

4   doubt?  How would you vote?

5       THE PROSPECTIVE JUROR:  I would say that they

6   didn't do what they accomplished.  So, no, that there was

7   not proof beyond a reasonable doubt.

8       MR. CEPHAS:  So even though you believe you know

9   the answer, would you hold them to their burden of did

10  they prove it?

11      THE PROSPECTIVE JUROR:  Yeah.  They would have to

12  show conclusive evidence like I can still have my opinion

13  about what I think might be out there, but if what they

14  showed doesn't prove that, then it can't be, you know,

15  then, that is basically not the case for showing it.

16      MR. CEPHAS:  Ms. Gilbert, I believe you were on a

17  civil jury before.

18      THE PROSPECTIVE JUROR:  Yes.

19      MR. CEPHAS:  In a civil jury, it is not proof

20  beyond a reasonable doubt.  It is just who do you believe

21  more?  And there is a difference in a criminal case.  In

22  a criminal case, they have to prove it beyond a

23  reasonable doubt.  In a civil trial that you were

24  involved with, you just have to decide at the end of the

25  day who you believed more.  So your opinion in that kind

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    of a case is relevant.

2                Do you understand that your opinion as to

3    guilt or innocence is not relevant here?

4            THE PROSPECTIVE JUROR:  Yes.

5            MR. CEPHAS:  Okay.  And will you be able to make

6    sure that you only find the defendant guilty if the

7    government has proven that beyond a reasonable doubt?

8            THE PROSPECTIVE JUROR:  Absolutely.

9            MR. CEPHAS:  Mr. Tran, I think you indicated that

10   you were concerned as we all are with being home for the

11   holidays; is that correct?

12           THE PROSPECTIVE JUROR:  Yes.

13           MR. CEPHAS:  I have a three year old.  He will

14   kill me if I am not home.  If during deliberations, the

15   the other 11 jurors have all ruled in one direction, but

16   you are voting the other way and you are convinced that

17   you are correct but you want to get home for Christmas,

18   would you change your vote just so that you could get out

19   of here?

20           THE PROSPECTIVE JUROR:  No.

21           MR. CEPHAS:  What if the judge called the jury out

22   and said to you again, you need to make a decision.  If

23   you are convinced, absolutely convinced that you are

24   right, are you going -- would you change your decision to

25   prevent say the peer pressure from other jurors being

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    upset with you that you are holding them up from leaving?

2         THE PROSPECTIVE JUROR:  No.  I would hold to my

3    opinion.

4         THE COURT:  To put your minds at ease, ladies and

5    gentlemen, that is not going to happen.  Okay.

6              Two minutes.

7         MR. CEPHAS:  I forgot your name.

8         THE PROSPECTIVE JUROR:  Viggianelli, Brian.

9         MR. CEPHAS:  And I think you indicated you have

10   been pulled over several times or stopped by law

11   enforcement several times?

12        THE PROSPECTIVE JUROR:  Yes.

13        MR. CEPHAS:  Do you believe that sometimes law

14   enforcement officers harass certain individuals because

15   of how they look or what they drive?

16        THE PROSPECTIVE JUROR:  Yes.  I used to drive a

17   Trans Am, and then I ended up driving my aunt's ox blood

18   red Cadillac, and I got pulled over a lot more in my

19   aunt's Cadillac than I did in my Trans Am.

20        MR. CEPHAS:  Do you think that someone of Latino

21   descent may be harassed more than someone who is white?

22   Do you think law enforcement officers sometimes harass

23   people based on their race or make assumptions about them

24   based on their race?

25        THE PROSPECTIVE JUROR:  Yeah.  I guess more, I

```
 1    don't necessarily want to say race but definitely

 2    appearance, and obviously races will have, you know,

 3    there are certain stereotypes that go with that.  But you

 4    know, because I have dealt with it a few times, I do

 5    think that that is true.

 6              MR. CEPHAS:  Thank you.  Nothing further.

 7              THE COURT:  Mr. Navarro.  Briefly.

 8              MR. NAVARRO:  Good afternoon everybody.  Is there

 9    anyone here who when you walked in today looked over at

10    Mr. Rivera or perhaps because I happen to be Latino as

11    well and assume that we were here for something to do

12    with guilty of a crime?  Anyone make an assumption about

13    my client or perhaps Mr. Cephas, maybe even Mr. Walsh,

14    although I doubt it, about the individual when you walked

15    in that you assume, oh, I wonder what he or she did?

16    Anyone make that kind of assumption when they walked in?

17              Now, one of you mentioned, I think it was

18    Mr. Bancroft, that you had been arrested four years ago,

19    what was that for?

20              THE PROSPECTIVE JUROR:  Misdemeanor burglary and

21    misdemeanor trespass.

22              MR. NAVARRO:  What happened with those charges?

23              THE PROSPECTIVE JUROR:  I took a plea bargain and

24    got a misdemeanor prowling, two years probation, 20 days

25    community service.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          MR. NAVARRO:  Thank you.

2              Now, Mr. Guerrero talked about your sister had

3  a drug problem; is that correct?

4          THE PROSPECTIVE JUROR:  It was my nephew.

5          MR. NAVARRO:  Your nephew.  Sorry.  And you

6  indicated early in the morning that this had a --

7          THE PROSPECTIVE JUROR:  It was a big impact, I

8  mean, for the family.  I mean, you don't expect anyone in

9  your family to, you know, take drugs especially in my

10 family.  We were pretty good people, and so it did affect

11 all of us.

12         MR. NAVARRO:  What type of narcotics was it?

13         THE PROSPECTIVE JUROR:  Cocaine, marijuana and not

14 sure what else.

15         MR. NAVARRO:  Now, if this case there was

16 allegations of narcotics dealing, would that affect your

17 opinion to be fair and impartial to the defendants in

18 this case?

19         THE PROSPECTIVE JUROR:  Perhaps.

20         MR. NAVARRO:  Why?

21         THE PROSPECTIVE JUROR:  Well, he is getting the

22 drugs from someone.

23         MR. NAVARRO:  And what does that create in your

24 mind?

25         THE PROSPECTIVE JUROR:  Negative emotions.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   Sadness, you know.

 2         MR. NAVARRO:  Sadness.  Why?

 3         THE PROSPECTIVE JUROR:  Because we went through a

 4   lot, you know, with my sister.  It took a long time for

 5   her to recover.

 6         MR. NAVARRO:  Thank you.

 7             Now, Mr. Willis, we keep coming back to you.

 8   I do apologize for that.

 9         THE PROSPECTIVE JUROR:  I am nothing but trouble.

10         MR. NAVARRO:  I believe you stated, and correct me

11   if I am wrong, that you would want to look the defendant

12   in the eye, you would want to hear from him?

13         THE PROSPECTIVE JUROR:  Yes.  I think I want all

14   information.  I want as much information as I can get.

15   What you talked about behind there, I would want to know

16   that too.  I would want to know everything.

17         MR. NAVARRO:  And if a defendant did not testify,

18   would you assume there was some reason why he or she did

19   not testify?

20         THE PROSPECTIVE JUROR:  There would have to be a

21   reason, wouldn't there?

22         MR. NAVARRO:  But would you assume that it was a

23   bad reason?

24         THE PROSPECTIVE JUROR:  No.

25         MR. NAVARRO:  You would think there was just some
```

1    reason?

2            THE PROSPECTIVE JUROR:  There would have to be a

3    reason.  You would have to come to a decision one way or

4    the other.  Do you play the dice, flip a coin or make an

5    informed decision.  I would make an informed decision.

6            MR. NAVARRO:  And you would want to know about the

7    reasoning behind that if you could?

8            MR. NAVARRO:  Yes, I would.

9            MR. NAVARRO:  Is there anyone else who feels that

10   way?  That if you are accused of a crime you should speak

11   up and defend yourself?  Anybody else have strong

12   feelings that way one way or the other?

13           Let me ask you, sir -- thank you.  By the way,

14   thank you.

15           If I could have a second, your Honor.

16           Mr. Jordan, how long did you work in

17   corrections?

18           THE PROSPECTIVE JUROR:  26 years.

19           MR. NAVARRO:  Was this through the California

20   Department of Corrections?

21           THE PROSPECTIVE JUROR:  Yes, sir.

22           MR. NAVARRO:  Were you in the prison setting

23   during most of the time?

24           THE PROSPECTIVE JUROR:  I worked within the prison

25   setting for probably 15 years.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          MR. NAVARRO:  And in the prison setting, you were

2    dealing with inmates who were incarcerated?

3          THE PROSPECTIVE JUROR:  Yes, sir.

4          MR. NAVARRO:  I think Mr. Cephas asked you some

5    questions about that.  The inmates that you dealt were

6    with, were they mostly men?

7          THE PROSPECTIVE JUROR:  Yes.

8          MR. NAVARRO:  If you remember or maybe you don't

9    remember, what percentage were Latino.

10         THE PROSPECTIVE JUROR:  I mean, I think I would be

11   speculating.

12         MR. NAVARRO:  More than half?

13         THE PROSPECTIVE JUROR:  I can't say.  I mean, I am

14   not sure.  Half of the inmate population, you are asking

15   me, was Hispanic?

16         MR. CEPHAS:  What you dealt with in your work.

17         THE PROSPECTIVE JUROR:  The number would be high.

18   I mean, if it is half, I don't know if I can say if I

19   thought it was half.  I would think it would be between

20   the Hispanic and the African-American inmates, that is

21   probably 75 percent of the inmate population in the

22   state.

23         MR. NAVARRO:  I think Mr. Cephas asked you this

24   question as well, but if Mr. Cephas and I were both in

25   custody, we would have to align ourselves with different

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   groups?

 2        THE PROSPECTIVE JUROR:  Well, you wouldn't have

 3   to, but that is usually what happens.  I mean, you can

 4   stand alone.  It is not mandatory, but in most cases

 5   people do.

 6        MR. NAVARRO:  And it becomes a survival mechanism?

 7        THE PROSPECTIVE JUROR:  Yes.

 8        MR. NAVARRO:  It may not have anything to do with

 9   being a gang member?

10        THE PROSPECTIVE JUROR:  Not necessarily.

11        MR. NAVARRO:  If you know, based on your

12   experience in law enforcement and corrections, what

13   percent of inmates that you dealt with were gang members?

14        THE PROSPECTIVE JUROR:  Again, I am going to be

15   speculating.  I don't think I can truthfully answer that

16   question.  I mean, I am not really sure.  I mean, the

17   prison system, there is gang members in the prison

18   system, but to what percentage, I have no idea to be

19   honest with you.

20        MR. NAVARRO:  Would it be a correct statement to

21   say that maybe not everybody who is in prison is a gang

22   member?

23        THE PROSPECTIVE JUROR:  Of course.

24        MR. NAVARRO:  Regular folks like you and I.

25            Thank you, your Honor.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  All right.  Ladies and gentlemen, we
 2    are going to take a break.  We are going to break for an
 3    hour.  And when we come back, hopefully, we are going to
 4    be only moments away from opening statements in this
 5    case.  Please remember the admonition, but I would like
 6    you back here in your places at 1:30.
 7          (Recess from 12:25 to 1:30 p.m.)
 8          (The following proceedings were held in the
 9           presence of the prospective jurors:)
10          THE COURT:  Mr. Cephas, how many additional
11    peremptories did I say the defense would have?
12          MR. CEPHAS:  Four.
13          THE COURT:  Okay.  Thanks.  All right.
14          Ladies and gentlemen, we are at that stage of
15    the jury selection process where we actually start making
16    selections.  Your questioning is over.
17          Now, the lawyers will exercise what they refer
18    to as peremptory challenges which are given or challenges
19    that are made for no reason given.  It is just a gut
20    feeling.  And you aren't to take anything from that as
21    being any indication of whether or not they would like to
22    have dinner with you.
23          All right.  Let's begin -- well, let me see.
24    Have you received any explanation as to how this is going
25    to proceed?  I can tell you quickly.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. DORE:  We have spoken with Ms. English, but we

 2    would love some additional.

 3          THE COURT:  All right.  What you can do with this

 4    sheet with the exception of Government's No. 1, add an

 5    additional box everywhere until you get to 9 and 10.

 6    Leave those as they are.  Okay.  Everywhere there is an

 7    additional box.  So defense one, a box.  Government two,

 8    another box.  Defense two and three will be now defense

 9    two, three and four.

10          THE COURT:  All right.  Mr. Dore, are you ready?

11          MR. DORE:  Yes, your Honor.

12          We would ask the court to thank and excuse

13    Juror No. 3, Ms. Gurican.

14          THE COURT:  All right.  Thank you, ma'am.  You can

15    please return to the third floor.

16          All right.  The next two peremptories are with

17    the defense.  Now, we should have talked about this

18    before.  I simply assumed that there would be a

19    spokesperson for the defense, but, Mr. Navarro, I am

20    worried about you not being heard.

21          MR. NAVARRO:  Your Honor, we spoke before you took

22    the bench, and we have some agreement.

23          THE COURT:  Okay.

24          MR. NAVARRO:  And when we do have a disagreement,

25    we will speak amongst ourselves.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1        THE COURT:  Excellent.  All right.  Then, the next

2   two peremptories are with the defendants.

3        MR. NAVARRO:  Does your Honor seat additional

4   jurors in the empty spots?

5        THE COURT:  No.  We absolutely are.  And I don't

6   know what point Ms. English wants to do that, but I want

7   you all to know exactly what is coming.  Tell you what,

8   after about six or so, we will start filling in.  How is

9   that?  Does that work?

10        (Pause in proceedings.)

11        MR. WALSH:  Your Honor, the first two challenges

12   for the defense are No. 12 and No. 9.

13        THE CLERK:  Karen Slingerland.  12 is Nelson

14   Willis.

15        THE COURT:  What a surprise, Mr. Willis.

16        (Laughter.)

17        THE COURT:  All right.  The next two peremptories

18   are with the government.

19        MR. DORE:  Your Honor, the government would ask

20   the court to thank and excuse Juror No. 5, Ms. Wolfe, and

21   Juror No. 6, Mr. Hecht.

22        THE COURT:  All right.  Thank you, counsel.

23            All right.  Ms. Wolfe, Mr. Hecht, you can

24   return to the third floor.  Thank you for your

25   participation and your willingness to serve, and those
```

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

1    baby-sitting issues are now over.

2            THE PROSPECTIVE JUROR:  They are.  Thank you.

3            THE COURT:  Would you punch the 20-year-old on the

4    cheek for me.

5            (Laughter.)

6            THE COURT:  All right.  The next three

7    peremptories are with the defense.

8            MR. DORE:  Your Honor, would it be possible at

9    this point maybe to fill the chairs up?

10           THE COURT:  Okay.  You are right.  It is looking

11   sparse, and they are lonely.

12           MR. WALSH:  Your Honor, could I have a point of

13   clarification.  Would the alternate jurors 13 and 14 now

14   be part of the jury panel as 12 and they should move?

15           THE COURT:  No.  We don't have a 13 and 14 yet.

16   We won't have it until we have 12.  Relax.  We are not

17   there yet.  But when we finally swear in the 12, whoever

18   is sitting in 13 and 14 will be the first two alternates,

19   and whoever is over there will be the third and fourth.

20   But we will swear in the 12 so you will know.  Okay.

21           MR. WALSH:  Well, it seems by that calculation,

22   then, 13 and 14, the present 13 and 14 would always --

23   they have already been preselected as alternates then.

24           MR. WALSH:  No.  Absolutely not.  Wait.

25           THE CLERK:  It is okay.  Don't.  I got it.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  No. I think he is right.  It pains me

 2    to say that.  I think you are right.

 3          MR. CEPHAS:  That was my understanding also, your

 4    Honor.

 5          THE COURT:  Wait a minute.  This is not good.

 6          (Court and counsel confer off the record.)

 7          THE COURT:  Everyone back where you were.  Don't

 8    get comfortable.

 9               Wait.  Mr. Jordan.  I'm sorry.  Right here.

10          THE COURT:  That was easy.

11               All right.  Thank you, Mr. Walsh.

12               The next three with the defense.  Do you pass?

13          MR. WALSH:  We have two out of the three we can

14    give you right now.

15          THE COURT:  That would be good.  Anything.

16          MR. WALSH:  Yes.  Defense would thank and excuse

17    currently Juror No. 3, Tony Diep, and currently Juror No.

18    5, Pete Roble, and we just need a minute on the third.

19          THE COURT:  Gentlemen, thank you.

20          MR. WALSH:  As to the third one, your Honor?

21          THE COURT:  Okay.  Mr. Walsh.

22          MR. WALSH:  And our third challenge we would thank

23    and excuse current seated Juror No. 3, Ms. Austin.

24          THE COURT:  She is thrilled.  All right.

25               Ms. Austin, thank you for your willingness to
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   serve.  Return to the third floor, please.
 2             All right.  Next two with the government.
 3   Okay.  Mr. Dore.
 4             MR. DORE:  Your Honor, for the first one, the
 5   government would ask the court to thank and excuse
 6   Mr. Bancroft, and may we have one moment for the second
 7   one.
 8             Ms. Candace Lowry, your Honor.
 9             THE COURT:  7.  Ms. Lowry.  Okay.
10             All right.  Let's stay within 1 to 12.  Okay?
11             MR. DORE:  Understood.
12             THE COURT:  Next three from the defense.
13             MR. WALSH:  We have two of the three right now,
14   your Honor.  Current Juror No. 4, Ms. Wang, and current
15   Juror No. 7, Ms. Rathsam.
16             THE COURT:  All right.  Thank you.
17             You ladies can return to the third floor and
18   thank you.
19             MR. WALSH:  And we need just a minute for the
20   third one.
21             As to our third challenge, your Honor, we ask
22   to thank and excuse Juror No. 3, Mr. Bruce Honeybourne.
23             THE COURT:  Mr. Dore?
24             MR. DORE:  Your Honor, the government passes.
25             THE COURT:  All right.  The government accepts the
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    jury as presently constituted.

 2             Next three with the defense.  This afternoon.

 3         (Defense counsel confer.)

 4         MR. WALSH:  We have two of the three, your Honor,

 5    Juror No. 17, Mr. Williams.

 6         THE COURT:  Hold on.  1 to 12.

 7         MR. WALSH:  Number 9.  I'm sorry.

 8         THE CLERK:  What is the name?

 9         MR. WALSH:  Gerald Williams.  Your Honor, I wanted

10    to challenge to Juror No. 11 because 11 would be going

11    into his seat, and just to speed things up, the defense

12    would thank and excuse Mario Guerrero who is currently in

13    seat No. 13.

14         THE COURT:  13.  Thank you.  All right.

15         (Defense counsel confer.)

16         MR. CEPHAS:  Your Honor, we are going to pass.

17         THE COURT:  All right.  The defense accepts the

18    jury as presently constituted.  We have a jury.

19         MR. DORE:  Your Honor, I believe --

20         THE COURT:  Has there been a change?  I'm sorry.

21    You are right.  I'm sorry.  I'm sorry.  After you pass,

22    there were then two excusings.  All right.  Then, the

23    next two peremptories with the government.  I apologize.

24         MR. DORE:  Your Honor, the government would ask

25    the court to thank and excuse Juror No. 9.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE PROSPECTIVE JUROR:  Maritere Satterlee.

 2          THE COURT:  Okay.

 3          MR. DORE:  And, your Honor, the government would

 4   ask the court to thank and excuse Mr. Viggianelli who was

 5   just seated in No. 14.

 6          THE COURT:  Do you want to do that?  Wait.  Wait.

 7   That is really an alternate seat.  So don't waste it on

 8   them.  I mean, you might get there, but, right now, I am

 9   just going to 12.

10          MR. DORE:  Your Honor, at that point the

11   government, then, passes.

12          THE COURT:  Okay.

13          THE COURT:  Defense?

14          MR. CEPHAS:  Pass, your Honor.

15          THE COURT:  Okay.  All right.  Government pass,

16   the defense pass.  Now, we have a 12-person jury.  All

17   right.

18          THE CLERK:  Jurors 1 through 12, can I have you

19   stand, please.  Please raise your right hand.

20          (The jury was sworn.)

21          THE CLERK:  Please be seated.

22          THE COURT:  All right.  We are now going to select

23   four alternate juror in much the same way.

24              Right now, the gentlemen seated in seats 13

25   and 14 would be -- and the seats reserved for alternate
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    jurors as well as 15 and 16.  All right.  The government

2    will have two peremptory challenges.  First challenge.

3           MR. DORE:  Your Honor, we ask the court to thank

4    and excuse Mr. Viggianelli, Juror No. 14.

5           THE COURT:  14.  All right.  Sir, you are excused.

6           THE COURT:  Mr. Walsh, what say you?

7           MR. WALSH:  Pass, your Honor.

8           THE COURT:  Defense passes.

9           THE COURT:  Next peremptory is with the

10   government.

11          MR. DORE:  We pass as well, your Honor.

12          THE COURT:  All right.  We have four alternates.

13   Thank you.

14          (The alternates were sworn.)

15          (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1                        CERTIFICATE

 2

 3

 4   I hereby certify that pursuant to Section 753, Title 28,

 5   United States Code, the foregoing is a true and correct

 6   transcript of the stenographically reported proceedings held

 7   in the above-entitled matter and that the transcript page

 8   format is in conformance with the regulations of the

 9   Judicial Conference of the United States.

10   Date:  August 2, 2013

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA