1              UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3              HONORABLE OTIS D. WRIGHT

4          UNITED STATES DISTRICT JUDGE PRESIDING

5                      - - -


6
United States of America,          )
7                     PLAINTIFF,    )
                                    )
8  VS.                              )  NO. CR 10-351 ODW ODW
                                    )
9  Carlos Rivera, Jessica Medina, Raul)
   Prieto,                          )
10                    DEFENDANT,    )
   _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15              LOS ANGELES, CALIFORNIA

16             MONDAY, MARCH 11, 2013

17

18

19   _____

20          KATIE E. THIBODEAUX, CSR 9858
            U.S. Official Court Reporter
21          312 North Spring Street, #436
            Los Angeles, California 90012

22

23

24

25

        UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFF:

4
         U.S. DEPARTMENT OF JUSTICE
5        U.S. ATTORNEY'S OFFICE
         BY: REEMA EL-AMAMY, AUSA
6        312 North Spring Street
         Twelfth Floor
7        Los Angeles, CA  90012

8

9    FOR DEFENDANT RIVERA:

10       ANGEL NAVARRO LAW OFFICE
         BY:  ANGEL NAVARRO
11       714 West Olympic Boulevard
         Suite 450
12       Los Angeles, CA  90015

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          LOS ANGELES, CALIFORNIA; MONDAY, MARCH 11, 2013

2                            10:11 A.M.

3                           - - - - -

4

5

6          THE CLERK:  Calling Item No. 1, CR 10-351, ODW,

7    United States of America versus Carlos Rivera.

8               Counsel, please state your appearances.

9          MS. EL-AMAMY:  Morning, Reema El-Amamy and Michael

10   Dore on behalf of the United States.

11         THE COURT:  Good morning, counsel.

12         MR. NAVARRO:  Morning, your Honor.  Angel Navarro

13   with Carlos Rivera.  He is standing to my left.

14         THE COURT:  Mr. Navarro, Mr. Rivera.  Gentlemen,

15   please, be seated.

16              All right.  We are here for the sentencing in

17   this matter.  On December 12th of 2012, Mr. Rivera was

18   found guilty by a jury following trial on Counts 1, 2, 5,

19   6, 10 and 23 of the 30-count indictment.

20              Count 1 charges a violation of Title 18,

21   United States Code, Section 1962(d), as in David,

22   Racketeer Influenced and Corrupt Organizations

23   Conspiracy.  Specifically, on a date unknown and

24   continuing to April 7 of 2010, Rivera and others being

25   employed by and associated with the Black Angels criminal

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   enterprise conspired to conduct and participate directly

2   and indirectly in the conduct of the affairs of the

3   enterprise through a pattern of racketeering activity

4   consisting of multiple acts involving extortion,

5   distribution of controlled substances and conspiracy to

6   distribute controlled substances.

7            Count 2 charges a violation of Title 18,

8   United States Code Section 1962(c), Racketeer Influenced

9   and Corrupt Organizations, specifically, on a date

10  unknown, and continuing to April 7, 2010, Rivera and

11  others being employed by and associated with the Black

12  Angels criminal enterprise conducted and participated

13  directly and indirectly in the conduct of the affairs of

14  the enterprise through a pattern of racketeering activity

15  consisting of multiple acts involving extortion,

16  distribution of controlled substances and conspiracy to

17  distribute controlled substances.

18           Count 5 charges a violation of Title 21,

19  United States Code, Section 846, conspiracy to distribute

20  and to possess with intent to distribute methamphetamine

21  and heroin.  Specifically, beginning on an unknown date

22  and continuing to on or about April 7, 2010, Rivera and

23  others violated Title 21, United States Code, Section 846

24  by conspiring to commit the following offenses:

25           One, to distribute at least 50-grams of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    methamphetamine or at least 500-grams of a mixture or

2    substance containing methamphetamine in violation of

3    Title 21, United States Code, Sections 841(a)(1) and

4    841(b)(1)(A)(viii).

5             Two, to distribute at least 5-grams of

6    methamphetamine or at least 50-grams of a mixture or

7    substance containing methamphetamine, a schedule

8    two controlled substance in violation of Title 21, United

9    States Code, Section 841(a)(1) and 841(b)(1)(B)(viii).

10            And, third, to distribute at least 100-grams

11   of a mixture or substance containing a detectable amount

12   of heroin, a Schedule 1 narcotic drug controlled

13   substance.  This is in violation of Title 21, United

14   States Code, Section 841(a)(1) and 841(b)(1)(B)(i).

15            Count 6 charges a violation of Title 21,

16   United States Code, Section 841(a)(1) and (b)(1)(C),

17   distribution of methamphetamine.  Specifically, on

18   July 31, 2009, Rivera distributed approximately 4.4-grams

19   of methamphetamine.

20            Count 10 charges a violation of Title 21,

21   United States Code, Section 841(a)(1) and

22   841(b)(1)(A)(viii), possession with intent to distribute

23   methamphetamine.  Specifically, on August 6, 2009, Rivera

24   possessed with intent to distribute approximately

25   219-grams of methamphetamine.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              Count 23 charges a violation of Title 18,
 2   United States Code, Section 922(g)(1), felon in
 3   possession of a firearm.  Specifically, on July 22nd,
 4   2009, Rivera knowingly possessed a revolver and
 5   ammunition in and affecting interstate and foreign
 6   commerce.  Such possession occurred after Rivera had been
 7   convicted of 245PC, assault with a deadly weapon, San
 8   Bernardino County Superior Court Case No. FWV800678 on or
 9   about April 25th, 2008, an offense punishable by
10   imposition of a term of imprisonment for a period
11   exceeding one year.
12              The drug offenses, that is Counts 1, 2, 5, 6
13   and 10 carry a base offense level, and this is pursuant
14   to U.S. Sentencing Guidelines, Section 2D1.1C3.  There
15   are no adjustments.  Based upon nine criminal history
16   points, Mr. Rivera falls within criminal history category
17   4.  This, then, results in a recommended sentencing range
18   of 210 to 262 months.
19              The separate offense, Count 23, the weapons
20   offense, carries a base offense level of 20.  This, then,
21   results in a recommended sentencing range of 51 to 63
22   months.
23              Before we get to the recommendations, are
24   there any objections to the method or outcome of the
25   computations of the arriving at the recommended or
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    guideline sentencing range?  Government?

2         MS. EL-AMAMY:  No, your Honor.

3         THE COURT:  Mr. Navarro?

4         MR. NAVARRO:  No, your Honor.

5         THE COURT:  All right.  Now, let's move on now to

6    the recommendations.  Probation has in its report which

7    was disclosed on February 11th of 2013 -- by the way,

8    Mr. Rivera, have you seen the presentence investigation

9    report prepared by probation?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Okay.  In that report, probation

12   recommends a sentence of 180 months on Counts 1, 2, 5, 6

13   and 10, and 120 months on Count 23, all to run

14   concurrently.  Probation officer recommends five years of

15   supervised release on the drug offenses and three years

16   of supervised release on the weapons offense all to run

17   concurrently.

18        The defendant's position is a recommendation

19   of no more than 144 months, the 500-hour residential drug

20   treatment program run by the Bureau of Prisons and a

21   Southern California placement.

22        I will just say now that the court is making

23   the recommendation for the Southern California placement

24   and the 500-hour RDAP.

25        The government's position is 210 months plus

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    five years of supervised release, and, of course, the

2    statutory assessment of $600.  The court's tentative

3    position at this time is to impose a sentence on the

4    five drug offenses of 236 months, all to run

5    concurrently, and a 57 month term of imprisonment on

6    Count 23, the weapons offense to run concurrently with

7    the sentence imposed on the drug offenses.  The court is

8    also inclined to impose a term of five years of

9    supervised release on the drug offenses and three years

10   of supervised release on the weapons offense, all to run

11   concurrently.

12         All right.  With that said, the court has read

13   the sentencing position papers filed by the government as

14   well as the sentencing position papers filed on behalf of

15   Mr. Rivera, and there was also an additional letter that

16   was submitted on Mr. Rivera's behalf.  The court has read

17   that as well.

18         I might as well say for the record Velia

19   Prieto, Mr. Prieto's mother has written a letter to the

20   court.

21         All right.  With that said, is there anything

22   that the government would like to add?

23         MS. EL-AMAMY:  Not at this time.

24         THE COURT:  All right.  Mr. Navarro?

25         MR. NAVARRO:  Yes, your Honor.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              Good morning, your Honor.

 2         THE COURT:  Good morning, sir.

 3         MR. NAVARRO:  I want to start off by telling you a

 4    true story.  It is a personal story, your Honor.

 5          THE COURT:  Okay.

 6         MR. NAVARRO:  When I was about 11 years old, I was

 7    raised in east Los Angeles, and I had a lot of friends

 8    who were not necessarily in gangs but wanted to join

 9    gangs.  And some of these friends were close friends of

10    mine.  So one day I had the brilliant idea of dressing

11    like a gang member, and it gave me a lot of respect in my

12    school at Ford Boulevard Elementary.  The kids didn't

13    bother me.  I wasn't bullied.  I had some friends who

14    were my homeys, and we were not jumped into any gang but

15    that was the plan.

16              And I went home that day.  My father came home

17    from driving his truck because he is a truck driver to

18    this day for Von's and he saw me dressed, how I was

19    dressed with my Pendleton shirt and my clean clothes and

20    my khaki pants and he took me out to the backyard.  We

21    had a pool table, and he told me to stand right there,

22    son.  And I stood there, and he got a pool stick, and he

23    broke it over my back.  That was the only time my father

24    ever hit me.  And it left an impression on me.  And he

25    said to me, son, if you dress like that tomorrow, I will
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    do it again.

2              So I went to school the next day.  I was not

3    dressed like a gang member, and I stopped hanging out

4    with those kids because I could not take my father

5    beating me up every day.  And he was trying to make a

6    point to me, and the point -- I was a pretty smart kid --

7    and I got it.

8              Now, Mr. Rivera never had that.  Mr. Rivera

9    like a lot of my other clients never had a father because

10   my mother was clueless about what I was doing.  And I see

11   this over and over.

12        THE COURT:  Let me interrupt you.  I could be

13   wrong, but what I read indicates that Mr. Rivera's father

14   didn't leave the household until Mr. R was 18.

15        MR. NAVARRO:  Well, your Honor, my understanding

16   is that he may not have left the household until he was

17   18, but he clearly wasn't a father to those children

18   because if you are a father to your children, you are not

19   going to let your children join gangs.  By the time my

20   client was 18 years old, two of his older siblings were

21   in prison already.

22        THE COURT:  Didn't we have testimony in this trial

23   from his mother?

24        MR. NAVARRO:  She is not his mother, your Honor.

25   She is Mr. Prieto's mother.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        THE COURT:  Okay.

2        MR. NAVARRO:  And she has done everything she

3  could to be a surrogate mother to my client, and he

4  appreciates it and obviously we appreciate it as well.

5  But the fact remains, your Honor, that Mr. Rivera grew up

6  in an environment where, in a sense, you know, it was

7  expected that he would join the gang.  It is unfortunate.

8  In my family, we didn't have any gang members, and my

9  father wasn't going to allow any gang members.

10       THE COURT:  Why was it expected that he would join

11 a gang?  Is every teenager in Ontario part of the Black

12 Angels?

13       MR. NAVARRO:  Of course not.

14       THE COURT:  Why was it expected that he would join

15 the gang?

16       MR. NAVARRO:  Of course not.  Not every one of my

17 friends growing up in East Los Angeles became a gang

18 member.  But it is also clear, your Honor, at least from

19 my experience, that when I see young men join gangs, they

20 don't come from two parent homes.  They sometimes do.

21 But the reality is they don't.  Most of the time, they

22 have older siblings who have become members of the gang,

23 and you look up to your siblings just like I looked up to

24 my brother and my sister.  And you want to be like them.

25 And not just the siblings, but the friends who are, the

```
 1    friends that are siblings become, in essence, defacto

 2    brothers and sisters to you.  And that happens.

 3              I think it is Father Boyle -- I don't know if

 4    you know Father Boyle.

 5              THE COURT:  I do indeed.

 6         MR. NAVARRO:  He says no one joins the gang with

 7    the hope of something good coming out of it.  I don't

 8    think people do that.  I am not an expert in this, but

 9    having personal experience and being a lawyer for many

10    years, I see patterns.  You see patterns over and over

11    again.

12              And the point I am trying to make to you is

13    that I am not excusing what Mr. Rivera has done.  He is a

14    grown man now.  He has made his choices, and he has to

15    live with those consequences.  But at the same time, I

16    think we have to step back sometimes and think about who

17    we are sentencing, what kind of environment did he grow

18    up in.  I assume, I don't know much about your

19    background.  Maybe it is similar, maybe it is not.  But I

20    know I grew up in a very similar environment with a lot

21    of single parent homes, et cetera.

22              And, whatever, but the point is that

23    Mr. Rivera, your Honor, from a very young age was around

24    people who were not necessarily positive influences in

25    his life.  And he has made choices.  I believe it is
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    noted in the probation report the longest prison term he

 2    ever served has about been two years.  So if you give him

 3    19 years and eight months, I don't think that is

 4    necessary.

 5             I think you can serve the same purpose by

 6    giving him 12-and-a-half years and supervising him for

 7    five years afterwards.

 8             He has four children.  He hasn't been the

 9    father, I think, that he should be for those children,

10    and if he is sent away for almost 20 years that is never

11    going to happen.  And you are also going to sentence his

12    wife, and that will be for another day.  But the fact is,

13    your Honor, I don't believe you have to give someone that

14    much jail time.  And I have also looked at my client's

15    conduct in this case.

16             He was out on the streets for a few months,

17    your Honor, just a few months.  And during those few

18    months, he managed to sell narcotics.  He obtained a

19    weapon.  I don't think those things were ever denied.

20    The evidence spoke for itself during the trial.  And due

21    to a number of circumstances, my client went to trial,

22    and now he is before you.  And we are simply asking you

23    to reconsider, to look at him as a young man, he is not

24    even 30 years old, who does have some support now.

25             He has support from his, I call her his
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    stepmother and from other people.  And I learned this

2    morning that during the time when he was a teenager, he

3    would not sleep at home.  He would sleep in cars, and he

4    would sleep at friend's homes, and having children of my

5    own, I know how important stability is to a child.

6              I am a pretty stern father.  I don't hit my

7    kids, but I am a pretty stern father.  And one of the

8    keys is having continuity of two parents at home.  He

9    didn't have that, and it is not an excuse.  It is the

10   reality.

11             And I think you have to take that into

12   consideration now prior to sentencing him or anybody

13   else.

14             And I would submit on that, your Honor.

15        THE COURT:  Thank you, Mr. Navarro.

16             All right.  Mr. Rivera, you, I am sure your

17   attorney has told you this, you have an opportunity to

18   address the court on the issue of your sentencing, and I

19   am actually interested to hear from you.  So this is your

20   opportunity, sir, if you wish to exercise it.

21        MR. NAVARRO:  Your Honor, my client does want to

22   speak to you.  You want him there?  Okay.

23        THE DEFENDANT:  No.  I don't really got much to

24   say.  I just wanted to apologize to my family, my wife,

25   my kids, and I thank them for all the love and support

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  they give me.  And I only hope that you go with the

2  minimum in my recommendation, you know, so I can get out

3  to my kids.  And they messed up on my PSR.  I never grew

4  up with a dad.  You know, but that is pretty much it, you

5  know.  I just want to move on and learn from my mistakes.

6          THE COURT:  All right.  Anything from the

7  government?

8          MS. EL-AMAMY:  No, your Honor.

9          THE COURT:  All right.  Having considered both the

10  sentencing factors enumerated at Title 18, United States

11  Code, Section 3553(a) and the advisory guidelines range

12  of 210 to 262 months, based upon an offense level of 34

13  and a criminal history category of 4, it is ordered that

14  the defendant shall pay to the United States a special

15  assessment of $600 which is due immediately.  Any unpaid

16  balance shall be due during the period of imprisonment at

17  the rate of not less than $25 per quarter and pursuant to

18  the Bureau of Prisons' Inmate Financial Responsibility

19  Program.  All fines are waived as it is found that such a

20  sanction would place an undue burden on the defendant's

21  dependents.

22          Pursuant to the Sentencing Reform Act of 1984,

23  it is the judgment of the court that defendant Carlos

24  Rivera is hereby committed on counts 1, 2, 5, 6, 10 and

25  23 of the indictment to the custody of the Bureau of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   Prisons to be imprisoned for a term of 236 months.  This

2   term consists of 236 months on each of Counts 1, 2, 5, 6

3   and 10 and 57 months on Count 23, all such terms to be

4   served concurrently.

5          Upon release from imprisonment, defendant

6   shall be placed on supervised release for a term of

7   five years.  This term consists of five years on each of

8   counts 1, 2, 5, 6 and 10 and three years on Count 23 of

9   the indictment all such terms to run concurrently under

10  the following terms and conditions:

11         One, defendant shall comply with the rules and

12  regulations of the U.S. Probation Office and General

13  Order 05-02.

14         During the period of community supervision,

15  defendant shall pay the special assessment in accordance

16  with this judgment's orders pertaining to such payment.

17         Three, defendant shall refrain from any

18  unlawful use of a controlled substance.  Defendant shall

19  submit to one drug test within 15 days of release from

20  imprisonment and at least two periodic drug tests

21  thereafter not to exceed eight tests per month as

22  directed by the probation officer.

23         Four, defendant shall participate in an

24  outpatient substance abuse treatment and counseling

25  program.  Defendant shall abstain from illicit drugs and

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    alcohol and abusing prescription medications during the

2    period of supervision.

3         Five, during the course of supervision, the

4    probation officer with the agreement of the defendant and

5    defense counsel may place the defendant in a residential

6    drug treatment program approved by the U.S. Probation

7    Office for treatment of narcotic addiction or drug

8    dependency.  Defendant shall reside in the treatment

9    program until discharged by the program director and the

10   probation officer.

11        Six, as directed by the probation officer, the

12   defendant shall pay all or part of the cost of treating

13   his drug dependency to the after-care contractor during

14   the period of community supervision.  Defendant shall

15   provide payment and proof of payment as directed by the

16   probation officer.

17        Seven, the court authorizes the probation

18   office to disclose the presentence report to the

19   substance abuse treatment provider to facilitate

20   defendant's treatment for narcotic addiction or drug

21   dependency.  Further redisclosure of the presentence

22   report by the treatment provider is prohibited without

23   the consent of this court.

24        Eight, defendant may not associate with anyone

25   known to him to be a Black Angels gang member and others

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    known to him to be participants in the Black Angels gang

2    criminal activities with the exception of his family

3    members.  He may not wear, display, use or possess any

4    gang insignia, emblems, badges, buttons, caps, jackets,

5    vests or any other clothing that defendant knows evidence

6    affiliation with the Black Angels gang.  And he may not

7    display any signs or gestures that he knows evidence

8    affiliation with the black angels gang.

9            Nine, as directed by the probation officer,

10   defendant shall not be present in any area known to him

11   to be a location where members of the Black Angels gang

12   meet and/or assemble.

13           And, ten, defendant shall cooperate in the

14   collection of a DNA sample from himself.

15           As required by Title 18, United States Code

16   Section 3553(a), the court is required to impose a

17   sentence that is sufficient but not greater than

18   necessary to comply with the purposes set forth at

19   3553(a)(2).  The court has considered the nature and

20   circumstances of the offense, the history and

21   characteristics of the defendant.  The court has

22   recognized the need for the sentence imposed to reflect

23   the seriousness of the offense, that it should promote

24   respect for the law, it should provide just punishment

25   for the offense, it should afford adequate deterrence to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    future criminal conduct.  It should protect the public

2    from further crimes of the defendant and hopefully

3    provide the defendant with needed educational or

4    vocational training or other correctional treatment in

5    the most effective manner.

6              The court has evaluated the various kinds of

7    sentences available as well as the guidelines sentencing

8    range.  The court has also recognized the need to avoid

9    unwarranted sentencing disparities among defendants with

10   similar records who have been found guilty of similar

11   conduct.

12             The court has imposed the mid range sentence

13   in this case to reflect the ever-escalating nature of

14   Mr. Rivera's offenses, his propensity to carry a loaded

15   firearm and the very dangerous nature of the narcotics

16   that he chose to traffic in.

17             The advisory guidelines range has adequately

18   considered the nature of the offenses including the

19   defendant's membership in a criminal enterprise and the

20   nature of the racketeering acts in which he participated.

21   The guidelines have also accounted for the amount of

22   methamphetamine involved, the firearm he possessed as

23   well as his prior criminal history.

24             The offense is serious in light of the

25   defendant's possession of a large amount of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    methamphetamine for further distribution.  Prior to the

2    seizure, he had sold methamphetamine to two codefendants

3    and acquired a firearm.  Fortunately, law enforcement was

4    able to intercepts telephone calls that led to the

5    seizures of the methamphetamine and the weapon, and

6    examining his past misconduct and his behavior in the

7    instant matter, it appears that the defendant's criminal

8    conduct is escalating.

9           He has had a prior conviction for carrying a

10   loaded firearm as well as a conviction for felony assault

11   with a deadly weapon in which he pistol whipped the

12   victim.  At the time of the offense he was an active

13   member of the Black Angels street gang.  Of course, of

14   greater concern, is the fact that he and his long-term

15   girlfriend, codefendant Jessica Medina were maintaining

16   drugs in their residence where their children also lived.

17          Deterrence is an issue in that defendant

18   reoffended after previously serving a state prison term.

19          The defendant's sentence is also considerably

20   higher than many of his codefendants who appear to have

21   played similar roles in the offense and were not leaders

22   within the gang.  The defendant chose to go to trial,

23   however.  As such, the recommended sentence does not

24   create disparity with those who plead guilty to lesser

25   charges and received reductions for acceptance of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1 | responsibility.

2 |        In mitigation is the defendant's relatively

3 | youthful age of 23 at the time of the offense as well as

4 | his family circumstances.  As previously indicated, by

5 | the time he was 18, his father had abandoned the family.

6 | Two older brothers had gone away to prison, and his

7 | mother and sisters had moved away from their home town of

8 | Ontario.

9 |        It appears that his support network at the

10 | time of the offense consisted of Medina, his childhood

11 | friend Raul Prieto, Prieto's mother and the gang to which

12 | the defendant belonged.  Nonetheless, the defendant has

13 | had previous opportunities to reform himself, and he has

14 | failed to do so.  He has not yet completed high school

15 | and does not have any stable work history.

16 |        During his incarceration, he will be able to

17 | avail himself to the educational and job training

18 | programs.  Though he reported that he has never been

19 | addicted to controlled substance, he does have a lengthy

20 | history of drug use.  And he smoked marijuana and drank

21 | alcohol excessively at the time of his arrest.

22 |        Though he has no history of treatment for his

23 | substance abuse, it is reported that he is amenable to

24 | receiving drug treatment and counseling.  Therefore, the

25 | court has made the recommendation that he be assessed for

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   suitability for the Bureau of Prisons 500-hour

2   residential drug treatment program.

3            You have the right to appeal your conviction

4   if you believe that your guilt -- correction.  You have

5   the right to appeal your conviction and your sentence

6   with few exceptions.  Your notice of appeal must be filed

7   within 14 days of judgment being entered.

8            Do you understand that, Mr. Rivera?

9       THE DEFENDANT:  Yes, sir.

10      THE COURT:  If you are unable to afford a

11  transcript of the record in this case, one will be

12  provided at government expense.  If you are unable to pay

13  the cost of an appeal or the filing fee, you may apply

14  within 14 days for a waiver.

15           If you do not have an attorney to act on your

16  behalf and if you request it, the clerk of the court will

17  prepare and file a notice of appeal on your behalf.

18  Again, you must make the request within 14 days.

19           The notice of appeal must designate the

20  judgment or order appealed from and the fact that you are

21  appealing to the court of appeals.

22           It should also designate that portion of the

23  proceedings not already on file that you deem necessary

24  for the reporter to include.  Also, in its consideration,

25  the court has evaluated the sentencing guidelines as

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   required by Title 18, United States Code, Section
 2   3553(a)(4) and finds the calculations of suggested
 3   sentence therein for this defendant under the present
 4   circumstances to be reasonable.
 5          The court therefore sentences the defendant as
 6   previously stated.  You are remanded to the custody of
 7   the United States Marshal for delivery to the Director of
 8   the Bureau of Prisons.
 9          Anything further from the government?
10       MS. EL-AMAMY:  No, your Honor.
11       THE COURT:  Mr. Navarro.
12       MR. NAVARRO:  Two things, your Honor.
13       THE COURT:  Yes, sir.
14       MR. NAVARRO:  I believe you indicated earlier that
15   you would recommend placement in Southern California?
16       THE COURT:  I have.
17       MR. NAVARRO:  And, secondly, your Honor, I
18   received today my client's prescription glasses.  Could
19   the court issue an order that I be allowed to give them
20   to him so he could take them back to MDC?  He has been
21   getting migraines.  He doesn't have glasses.  He had them
22   in San Bernardino, but when he was moved, all that was
23   lost, your Honor.
24       THE COURT:  All right.  Let me look into it.
25       MR. NAVARRO:  I have them here with me.  They are
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    prescription glasses.

2         THE COURT:  Okay.  Let me look into it.

3         (Proceedings concluded.)

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1                           CERTIFICATE

2

3

4    I hereby certify that pursuant to Section 753, Title 28,

5    United States Code, the foregoing is a true and correct

6    transcript of the stenographically reported proceedings held

7    in the above-entitled matter and that the transcript page

8    format is in conformance with the regulations of the

9    Judicial Conference of the United States.

10   Date:  August 2, 2013

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA